KERR STEAMSHIP COMPANY, INC., Respondent, *v.* CHARTERED BANK OF INDIA, AUSTRALIA AND CHINA, Appellant.

Argued January 18, 1944; decided March 10, 1944.

*John W. Davis, William C. Cannon, Ewen C. MacVeagh* and *Harold W. Bissell* for appellant. I. Delivery of the negotiable instrument to plaintiff, consummated an executed sale; and thenceforth plaintiff could not go behind the negotiable instrument to rescind the executed transaction by which plaintiff had purchased the instrument. (*American Express Co.* v. *Cosmopolitan Trust Co.,* 239 Mass. 249; *Gravenhorst* v. *Zimmerman,* 236 N. Y. 22; *Moe* v. *Bank of United States,* 211 App. Div. 519; *Auerbach* v. *Barrett,* 214 App. Div. 279; *Carmen* v. *Higginson,* 245 Mass. 511; *Samuels* v. *E. F. Drew & Co.,* 296 F. 882; 62 A. L. R. 509.) II. The character of the initial transaction as an executed sale is not affected by the fact that drawer and drawee are the same or by any resulting option to treat the instrument as a promissory note. (*Chrzanowska* v. *Corn Exchange Bank,* 173 App. Div. 285, 225 N. Y. 728; *Mazukiewicz* v. *Hanover Nat. Bank,* 240 N. Y. 317; 241 N. Y. 504; 270 U. S. 643; *People's Savings Bank* v. *Bates,* 120 U. S. 556; *Clerke* v. *Martin,* 2 Ld. Raym. 757; *Buller* v. *Crips,* 6 Mod. 29; *Blackstone* v. *Miller,* 188 U. S. 189; *Gravenhorst* v. *Zimmerman,* 236 N. Y. 22; *Schweitzer* v. *Fargo,* 255 N. Y. 60; *Grannis* v. *Stevens,* 216 N. Y. 583.) III. The character and inviolability of the initial transaction as an executed sale is not affected by the war with Japan or by the Japanese invasion and occupation of the Philippines. (*Neumond* v. *Farmers Feed Co.,* 244 N. Y. 202; *New York Life Ins. Co.* v. *Statham et al.,* 93 U. S. 24; *Strauss* v. *Schweizerische Kreditanstalt,* 45 F. Supp. 449; *Hopkirk* v. *Page,* 2 Brock. 20, 12 Fed. Cas. 504; *Harden* v. *Boyce,* 59 Barb. 425; *Ray* v. *Smith,* 84 U. S. 411; *Bond et al.* v. *Moore,* 93 U. S. 593; *Tardy* v. *Boyd,* 67 Va. 631; *Patience* v. *Townley,* 2 Smith K. B. 223; *Wolcott* v. *Van Santvoord,* 17

Johns. 248; *Chrzanowska* v. *Corn Exchange Bank*, 173 App. Div. 285, 225 N. Y. 728; *Sokoloff* v. *National City Bank*, 250 N. Y. 69; 50 A. L. R. 1348–1359, 136 A. L. R. 478–497.) IV. The character of the initial transaction as an executed sale is not affected by the fact that the plaintiff purchaser was not the payee of the instrument. (*Lansing* v. *Gaine*, 2 Johns. 300; *Grannis* v. *Stevens*, 216 N. Y. 583; Moore, The Right of the Remitter of a Bill or Note, 20 Columbia Law Rev., 748; Beutel, Rights of Remitters, 12 Minn. Law Rev. 584; *Schweitzer* v. *Fargo*, 255 N. Y. 60.)

*Vermont Hatch* and *Chester Bordeau* for Bankers Trust Company, *amicus curiæ*, in support of position of appellant. The judgment appealed from should be reversed and the complaint dismissed. (*Schweitzer* v. *Fargo*, 255 N. Y. 60; *Spurrier* v. *Briggs*, 17 Ind. 529; *Hunt* v. *Aldrich*, 27 N. H. 31; *Barrick* v. *Austen*, 21 Barb. 241; *Gravenhorst* v. *Zimmerman*, 236 N. Y. 22; *Legniti* v. *Mechanics & Metals Nat. Bank*, 230 N. Y. 415; *American Express Co.* v. *Cosmopolitan Trust Co.*, 239 Mass. 249; *Pavenstedt* v. *N. Y. Life Insurance Co.*, 203 N. Y. 91; *Suse* v. *Pompe*, 8 C. B. [N. S.] 538; *Matter of Bank of United States*, 243 App. Div. 287; *Polotsky* v. *Artisans Sav. Bank*, 37 Del. 151; *Dean* v. *Eastern Shore Trust Co.*, 159 Md. 213; *Chrzanowska* v. *Corn Exchange Bank*, 173 App. Div. 285; *Matter of Harris*, 27 F. Supp. 480.)

*Otey McClellan* for National City Bank of New York, *amicus curiæ*, in support of position of appellant. Plaintiff has no right to recover the dollars paid for a foreign money negotiable instrument. (*Schweitzer* v. *Fargo*, 255 N. Y. 60; *Mazukiewicz* v. *Hanover Nat. Bank*, 240 N. Y. 317, 241 N. Y. 504, 270 U. S. 643; *Goeske* v. *Taylor*, 205 App. Div. 429; *Auerbach* v. *Barrett*, 214 App. Div. 279; *Moe* v. *Bank of United States*, 211 App. Div. 519; *American Express Co.* v. *Cosmopolitan Trust Co.*, 239 Mass. 249; *Foreign Trade Banking Corp.* v. *Cosmopolitan Trust Co.*, 240 Mass. 413; *Carmen* v. *Higginson*, 245 Mass. 511; *Redo y Cia.* v. *First Nat. Bank of Los Angeles*, 200 Cal. 161; *Suse* v. *Pompe*, 8 C. B. [N. S.] 538.)

*William M. Evarts* for Chase National Bank of City of New York and another, *amici curiæ*, in support of position of appel-

lant. It should not be necessary for a seller (no more a bank which has sold a specialty payable in foreign currency than a shopkeeper who has sold an article of merchandise) in order successfully to defend against taking back the article sold, to prove that it had replenished its inventory after the sale or that after the sale it had been compelled to refuse another customer because of shortage of inventory occasioned by the previous sale. To compel the seller here to take back the specialty sold would be particularly unjust when there is now no current demand for the article at any price and the price at which the article may be demanded in the future is speculative.

*Sherman Baldwin* for Hongkong & Shanghai Banking Corporation, *amicus curiæ*, in support of position of appellant. To permit the purchaser of a negotiable instrument to rescind his purchase, undermines the fundamental principles of the law merchant. (*Gravenhorst* v. *Zimmerman*, 236 N. Y. 22; *Pan-American Bank & Trust Co.* v. *National City Bank*, 6 F. 2d 762; *Matter of Harris*, 27 F. Supp. 480; *Chrzanowska* v. *Corn Exchange Bank*, 173 App. Div. 285, 225 N. Y. 728.)

*Elkan Turk, Herman M. Brauner, Raymond S. Baron, George Gaskill* and *Herman Goldman* for respondent. I. Appellant's undertaking, as evidenced by and integrated in the instrument which it delivered to respondent, was and remains purely promissory and executory in character. The instrument was a promissory note, not a bill of exchange. As it was never issued, it remained abortive. (*Schweitzer* v. *Fargo*, 255 N. Y. 60; *Pavenstedt* v. *N. Y. Life Insurance Co.*, 203 N. Y. 91; *Fairchild* v. *Ogdensburgh Clayton & Rome R. R. Co.*, 15 N. Y. 337; *Capital & Counties Bank, Ltd.*, v. *Gordon* [1903], A. C. 240; *Gravenhorst* v. *Zimmerman*, 236 N. Y. 22; *Wilcox* v. *Corwin et al.*, 117 N. Y. 500; *Converse* v. *Cook*, 31 Hun 417; *Gompertz* v. *Bartlett*, 2 El. & Bl. 849; *Suse* v. *Pompe*, 8 C. B. [N. S.] 538; *Matter of Francke & Rasch* [1918] 1 Ch. D. 470; *Baker* v. *Fifth Avenue Bank of New York*, 225 App. Div. 238; *Good* v. *Martin*, 95 U. S. 90.) II. Since appellant's undertaking was and remains promissory and executory in character and its performance by appellant has been prevented by a supervening impossibility and since appellant has not changed its position, respondent has the right to rescind the transaction and to recover the

moneys paid as upon a complete failure of consideration. (*Gravenhorst* v. *Zimmerman,* 236 N. Y. 22; *Safian* v. *Irving Nat. Bank,* 202 App. Div. 459, 236 N. Y. 513; *Atlantic Communication Co.* v. *Zimmermann,* 182 App. Div. 862; *Dolan* v. *Rodgers,* 149 N. Y. 489; *Sokoloff* v. *National City Bank,* 239 N. Y. 158, 250 N. Y. 69.) III. Appellant has suffered no change of position. (*Sokoloff* v. *National City Bank,* 250 N. Y. 69; *Gravenhorst* v. *Zimmerman,* 236 N. Y. 22.) IV. The authorities relating to true bills of exchange have no application to the case at bar. (*Pavenstedt* v. *N. Y. Life Insurance Co.,* 203 N. Y. 91; *Suse* v. *Pompe,* 8 C. B. [N. S.] 538; *Amsinck* v. *Rogers,* 189 N. Y. 252.) V. The war with Japan and the Japanese invasion of the Philippines and the effects of the war and of the invasion are at the root of respondent's right to recover. (*Gravenhorst* v. *Zimmerman,* 236 N. Y. 22.) VI. Appellant did not sell the instrument to respondent. (*Wylie* v. *Addoms,* 268 N. Y. 160; *Spencer & Co.* v. *Brown,* 143 N. Y. S. 994.)

LEHMAN, Ch. J. The plaintiff sues to recover the sum of $18,437.10 which it paid to the defendant bank on November 28, 1941, when it procured from the defendant bank two documents in the form of a draft '' in first and second exchange '' drawn by The Chartered Bank of India, Australia and China in New York upon The Chartered Bank of India, Australia and China in Manila and payable there on demand to the order of Roosevelt Steamship Agency, Inc. Claiming that war with Japan and the invasion of the Philippine Islands by Japan has made it impossible for the defendant bank to carry out its obligation in accordance with the intent of the parties, the plaintiff gave notice to the defendant that it elected to rescind the transaction and demanded the return of the moneys it paid to the bank. The bank refused to return the money, and the plaintiff then brought this action to rcover the money paid. After the defendant had interposed an answer, both parties moved for summary judgment. The court at Special Term granted the motion of the defendant to dismiss the complaint. The order was reversed by the Appellate Division and the motion of the plaintiff was granted.

The facts are not in dispute. Plaintiff's treasurer alleges in his affidavit that on November 28, 1941, the plaintiff '' desired

to make three remittances ''—one to its agent in Calcutta, another to its agent in Manila and the third to its agent in London. He asked the defendant bank for its '' *rates for telegraphic transfers to Calcutta and for drafts on Manila and England.*'' He '' desired to make telegraphic transfer to Calcutta because at that time mail communication to India, it being a British possession, was greatly impeded * * *. On the other hand, mail communication with the Philippines was open and in regular operation by both air mail and ordinary mail and hence remittances *through the transmittal of documents for the payment of money could be rapidly made by air mail.*'' Having received the defendant's '' *rates for Calcutta rupees, Philippine pesos and British sterling,*'' plaintiff's. treasurer requested the defendant bank '' to issue drafts in first and second of exchange to Roosevelt Steamship Agency, Inc. for the Philippine pesos * * *'' and to another payee in London for British sterling. The defendant was informed that the plaintiff '' intended to send the first of exchange of the draft payable to Roosevelt Steamship Agency, Inc. by air mail and the second of exchange by ordinary mail.'' Plaintiff paid the defendant its charges '' for the issuance of the drafts in pesos '' and in British sterling, and at the same time paid in addition the defendant's usual charge of fifty cents for '' transmittal by air mail of advices to its foreign agencies '' and the person procuring the draft for the plaintiff informed the defendant that he intended to transmit the draft by air mail. (Italics throughout this opinion are ours.)

The intention of the plaintiff to make '' remittances '' of pesos to Manila rapidly by air mail through '' transmittal of documents for the payment of money.'' has been frustrated. Though the documents were promptly mailed to Manila, the outbreak of war made delivery there impossible and they were returned to the sender. The defendant bank cannot do business in Manila so long as the Japanese are in possession of the islands. The Appellate Division has held that due to these conditions there has been a complete failure of consideration, entitling the plaintiff to rescind the transaction.

The plaintiff alleges in its complaint that the defendant in consideration of the moneys paid to it, '' promised and agreed

to and with the plaintiff that the defendant would pay to Roosevelt Steamship Agency Inc. * * * the sum of 37,000 Philippine pesos. To evidence the defendant's aforesaid agreement and to specify the manner of its performance and at its direction to its representatives in Manila to make payment as aforesaid, the defendant delivered to the plaintiff two documents * * *." The defendant's alleged promise that it would pay to the Roosevelt Steamship Company in Manila the sum of 37,000 pesos is a unilateral primary promise to pay a sum of money. The plaintiff has given to the defendant the full stipulated consideration for that alleged promise. "The manner of its performance" is formulated in the documents delivered to the plaintiff. Payment is to be made only in Manila upon demand there and presentation of one of the "drafts", the other being unpaid. During the continuance of a state of war a presentment of the draft at a point across the line of hostilities is impossible, and delay in presentment is excused. (Negotiable Instruments Law, § 141.) Performance of the contract in Manila would indeed be illegal during the continuance of hostilities. (Restatement of the Law of Contracts, § 596.) There has been, it is claimed, "supervening inpossibility" in the performance of an executory contract made as alleged in the complaint between the plaintiff and the defendant for the payment of foreign money in a foreign country which entitles the plaintiff to restitution of the consideration paid in accordance with the rules formulated in the Restatement of the Law of Restitution, section 108.

We think that upon the undisputed facts — conceded or stipulated by the parties or established by the affidavits of both parties — it appears conclusively that the defendant did not, as alleged in the complaint, assume for a stipulated consideration a primary executory obligation to pay pesos in Manila in accordance with a contract "evidenced" by the documents delivered to plaintiff. The affidavit of plaintiff's treasurer accurately describes the transaction. The plaintiff paid the defendant the agreed rate for "drafts" in Manila in order to make a "remittance" to Manila through "transmittal of documents for the payment of money". In return it received from the defendant documents executed by the plaintiff as the "first and second of exchange" of a draft drawn by the defendant on itself at Manila. Those documents did more than

"evidence" the agreement. The agreement was integrated in the instruments. They were the documents "for the payment of money" which the plaintiff desired to procure and by which the remittance could be rapidly made. The question which we must decide is whether that exchange, in which the plaintiff paid its money and received in return an instrument in the form of a draft or foreign bill of exchange, may be rescinded by the plaintiff because payment in accordance with the terms of the instrument cannot be demanded or made during the continuance of a state of war. We do not decide whether war supervening after the creation of a simple contract for the payment of money in Manila or a contract for a credit in foreign exchange there would give rise to a right of rescission and restitution of the consideration paid or whether the war would merely suspend enforcement of the obligation. (See *Neumond* v. *Farmers' Feed Co.*, 244 N. Y. 202, 206; Restatement of the Law of Contracts, § 596; Trotter, Law of Contract During and After War, 4th ed., London, 1940, 55 and 56.)

The distinction is clearly drawn in the opinion of this court in *Gravenhorst* v. *Zimmerman* (236 N. Y. 22, 31): "One who secures a draft obtains a written order by the drawer upon the drawee which by commercial usage and even by statutory enactment in some jurisdictions has come to be recognized as the symbol and equivalent of money and which enables the one who has obtained it without further action by the drawer to secure from the drawee the moneys which it represents. In consideration of the money paid by him he has actually obtained an instrument for the payment of money and which is regarded as its equivalent, and it is perfectly natural to speak of such a transaction as resulting in the executed purchase of a draft. A person who makes a contract for a credit in foreign exchange accomplishes no such result. He has secured nothing which will pass for money or which will enable him except through the action of the banker to obtain the exchange which he desires. It gives him no control whatever over the course of events which will lead to the establishment of the credit. The banker retains entire control of this and by his future actions causes to be set up the credit which will eventually enable the customer to obtain the exchange in money which he desires."

The rule is authoritatively established and universally recognized that the transfer of a draft in exchange for moneys paid

for the delivery of the draft is an executed transaction characterized generally as a " purchase and sale " of the draft. Such a transaction may not be rescinded by the purchaser when " supervening war " delays indefinitely presentment and payment of the draft. (*American Ex. Co.* v. *Cosmopolitan Trust Co.*, 239 Mass. 249; *Gravenhorst* v. *Zimmerman, supra; Schweitzer* v. *Fargo,* 255 N. Y. 60.) Upon such a " purchase " or exchange the purchaser obtains exactly what he sought — a completed instrument for the transmission of foreign exchange. The price fixed for the transfer of such an instrument depends upon the demand for " foreign exchange ", and foreign exchange is treated as " a commodity bought and sold in the market ". (*Richard* v. *America Union Bank,* 253 N. Y. 166, 174; see, also, Nussbaum, " Money in the Law," p. 113.) The " seller " of the draft enters into a binding engagement that " on due presentment the instrument will be accepted and paid * * * according to its tenor, and that if it be dishonored * * * he will pay the amount thereof to the holder ". (Negotiable Instruments Law, § 111.) The transfer or delivery of the instrument to " the purchaser " even though the purchaser is not the payee, completes the contract, integrated in the instrument and the contract is no longer revocable. (*Meeker* v. *Shanks,* 112 Ind. 207, 210.) The " price " paid to procure that engagement is the stipulated consideration both for the creation of the engagement and for its simultaneous transfer.

We are told that these rules do not apply where the bill of exchange is drawn by a bank upon its branch in a foreign country. " Where in a bill the drawer and drawee are the same person * * * the holder may treat the instrument, at his option, either as a bill of exchange or a promissory note." (Negotiable Instruments Law, § 214.) The question whether that section applies where a bank, engaged in the business of selling foreign exchange, sells a bill of exchange drawn upon its branch in a foreign country is important and is not free from doubt. We do not decide that question here nor do we decide whether a " purchaser " of such a bill who is not the payee is a " holder " within the meaning of the statute, who may exercise such an option. We assume for the purposes of this appeal that he may treat the bill as a promissory note.

It still remains true that he has received the instrument for which he bargained and for which he paid the stipulated price, and that instrument, like a draft drawn by a bank upon a correspondent bank not its own branch, is the chosen means for the transfer of a foreign credit. There has been no breach of the engagement integrated in the instrument whether treated as a draft or as a promissory note.

We have pointed out in a recent case that even upon " the purchase of cashiers' checks for remittances to payees where it is desirable to use the credit standing of the bank in making payment by check  *  *  *  the remitter is a purchaser for value of the bank's promise to pay " (citing *Armstrong* v. *American Exchange Bank*, 133 U. S. 433, 453; *Vander Ploeg* v. *Van Zuuk*, 135 Iowa, 350, 355; *Munn* v. *Boasberg*, 292 N. Y. 5, 9, decided January 13, 1944). The documents delivered by the defendant constitute, in the aspect most favorable to the plaintiff, negotiable paper " drawn " by the bank upon itself and accepted by the bank when it delivered the instrument as its obligation to the remitter for an agreed price. The analogy to a cashier's check is in all material respects complete. (See 6 Michie, Banks and Banking, 250.) The transfer of a cashier's check for " remittances " to payees where it is desirable to use the credit of the maker in making payment is as truly a completed purchase and sale as the transfer for similar use of a draft drawn by the maker upon a correspondent bank. (*Montana-Wyoming Assn.* v. *Commercial Bk.*, 80 Montana 174, 177; *Powell B. & L. Assn.* v. *Larabie Bros.*, 100 Montana 183, 194, 202.)

Until title to the instrument is transferred to the payee the " remitter " or " purchaser " remains its owner and in some circumstances may sue upon the instrument as if named as payee. No case has been found where such a person has been permitted to rescind the transaction and recover the purchase price on the ground of supervening impossibility in making presentment to the drawee in accordance with the terms of the instrument. (See Underhill Moore, The Right of a Remitter of a Bill or Note, 20 Columbia L. R., 749; Beutel, Rights of Remitters and Other Owners not within the Tenor of Negotiable Instruments, 12 Minn. L. R. 584.) The plaintiff having paid to the defendant the stipulated consideration for an instrument through which it could use the credit standing of the defendant in Manila in making a payment there, received and accepted

the instrument, delivered to it, and became its owner. It cannot rescind the transfer to it because it is impossible to use it now for the purpose for which it was acquired.

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

Conway, J. (dissenting). On November 28, 1941, plaintiff desired to make a remittance in the sum of 37,000 Philippine pesos to Roosevelt Steamship Agency, Inc., at Manila. It asked for defendant's rates for drafts on Manila, and after learning them, it requested defendant to issue drafts in first and second of exchange to Roosevelt Steamship Agency, Inc., for Philippine pesos. Plaintiff informed defendant that it intended to send the first of exchange by air mail and the second of exchange by ordinary mail. It paid defendant fifty cents for transmittal by air mail by defendant of an advice to its Manila agency of the draft. Plaintiff paid defendant $18,437.10 and received the following instrument:

" No. 40/35

Agency of

THE CHARTERED BANK OF INDIA, AUSTRALIA AND CHINA
New York

28th November 1941

Philippine

Exchange for     Pesos     37,000.     *     *     *

On Demand Pay this First of Exchange (Second being unpaid) to the order of   *   *   *   Roosevelt Steamship Agency, Inc. *   *   *   the sum of Philippine Pesos Thirty seven thousand *   *   *   not over Thirty seven thousand Pesos Value received.

For THE CHARTERED BANK OF INDIA, AUSTRALIA AND CHINA.

(Name illegible)          Agent.
(Name illegible)     Sub Account.

To

THE CHARTERED BANK OF INDIA,
AUSTRALIA & CHINA,
Manila "

The instrument was mailed to Roosevelt Steamship Agency, Inc., in Manila. It was returned to the plaintiff because of the

outbreak of hostilities between the United States and Japan and the seizure of the Philippine Islands by Japan. Likewise the advice which defendant had sent to its Manila agency was returned to it. Thereupon plaintiff returned the documents to defendant and demanded repayment of the $18,437.10. Defendant refused payment and this action was commenced.

The complaint alleges five causes of action. The first four are based upon an election by plaintiff to rescind the transaction. The fifth is for money had and received.

Defendant has based its refusal to pay on the ground that the transaction by which plaintiff obtained the documents is an executed transaction and plaintiff may not rescind it. On motion for summary judgment Special Term held that the contract was an executed one and could not be rescinded. The Appellate Division reversed on the grounds that the instrument was not a bill of exchange but a promissory note, since the drawer and the drawee were the same person; that the defendant had not changed its position; that no third party had any claim against defendant; that war had made impossible the performance of defendant's obligation; that there was a complete failure of consideration; that unless compelled to make restitution defendant would be unjustly enriched.

Defendant refused payment on the theory that the transaction was completely executed when plaintiff paid the money and defendant gave it the document; that the transaction may be likened to one wherein a person buys a bond or note or share of stock. The purchaser in such instance, however, has received an instrument or certificate which is the equivalent of money and which he can use to obtain money. That is the type of transaction referred to in *Gravenhorst* v. *Zimmerman* (236 N. Y. 22, 31) where this court said: "One who secures a draft obtains a written order by the drawer upon the drawee which by commercial usage and even by statutory enactment in some jurisdictions has come to be recognized as the symbol and equivalent of money and which enables the one who has obtained it *without further action by the drawer* to secure from the drawee the moneys which it represents. In consideration of the money paid by him he has actually obtained an instrument for the payment of money and which is regarded as its equivalent, and it is perfectly natural to speak of such a transaction

as resulting in the executed purchase of a draft." (Emphasis supplied.)

In that case, however, the drawer and drawee were *two different persons* while here *drawer and drawee were the same* and thus further action by the drawer-drawee was necessary. In the instant case, in addition, the plaintiff purchased an instrument for the payment of money *to a third party*. It was not the equivalent of money as to plaintiff. It never was a negotiable instrument. There never was an " issue " (see Negotiable Instruments Law, § 2), inasmuch as the transfer was not " * * * to a person who takes it as a holder." There never was a holder under Negotiable Instruments Law, section 2, inasmuch as the purchaser was not " * * * the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof." There never was negotiation. (Negotiable Instruments Law, § 60.) It was a non-negotiable instrument which was to become negotiable when delivered to the payee.

It may be argued, however, that plaintiff merely bought credit. In *Legniti* v. *Mechanics & Metals Nat. Bank* (230 N. Y. 415, 419) this court said: " It has long been an established custom among banks and financial institutions to sell credit usually represented by draft or check. Thus a bank having a credit with a correspondent in a foreign country will sell its draft or check, drawn upon such correspondent, to a purchaser who desires to make a foreign payment. *The draft is not the credit but represents the credit, or in other words, it is a notification to the correspondent or foreign representative to pay the money as directed. The draft is a direction to pay. It is not, itself, money or credit.* It is simply used as such.

*   *   *   *   *   *   *

" The thing sold is the same in the case of the cable or wireless transaction as in the case of the draft or check. It is the credit of the bank or seller. The means of establishing or transmitting the credit is simply an incident of the transaction. In the one case, it is a formal paper drawn up and signed by the seller directing his foreign correspondent to make payment of the amount and to the person therein stated. In the other case, it is a similar direction transmitted by cable or wireless."

If that be so, that which was sold was the credit of the defendant. It is to be noted that the draft here was drawn by defend-

ant's agent in charge of its New York agency upon its Manila agency. The draft was drawn by defendant upon itself and was at plaintiff's option, (if we assume it to be a negotiable instrument) under Negotiable Instruments Law, section 214, in reality a promissory note. What happened was that defendant delivered to plaintiff a written promise to pay pesos in Manila to a third person, a Philippine corporation. Defendant had something more to do after the delivery of the document to plaintiff: it still had to make payment in Manila to that third person. Defendant had made a contract, promissory and executory. The agent of defendant delineated it in his affidavit: " The defendant assumed no obligation except the obligation to honor the draft upon due presentation at its Manila office, in accordance with the usual principles governing negotiable instruments."

However, even if we were to consider the instrument here a promissory note there is still the question whether the delivery of it to the plaintiff-purchaser was to be considered a completed transaction in ordinary business transactions. When a formal note is delivered to a *purchaser who is a payee,* he may use the instrument as money. If the bank defaults, he may sue upon it for payment. Such a payee when he obtains the note has something which he can use as money or something which he can sue upon if payment is not made when due. Clearly there is there a completed transaction. That is not the case with a purchaser of a note sold by a bank to one not the payee named therein. That is not a completed sale of negotiable paper as between such purchaser and the bank until it has been delivered to the payee in accordance with the expressed intention of the purchaser and the bank.

Whether we consider the instrument a non-negotiable instrument, a bill of exchange or a promissory note what are the rights of the plaintiff *who is not the payee* named in the instrument but who has possession of the instrument, has paid value for it but who is unable by reason of a state of war existing, *to deliver* it to the payee named, as intended by purchaser and seller, and which could not be presented, even if delivered, in accordance with its terms, for the same reason? Add to that that there are no intervening rights of third parties, that there has been no change of position by defendant, as conceded by it, and that the drawer and drawee are one.

The plaintiff is a remitter. (See Beutel " Rights of Remitters and Other Owners not within the Tenor of Negotiable Instruments," 12 Minn. L. R. 584.) The position of remitter existed in the law merchant and it was generally considered that the remitter had a remedy against the drawer when payment was not made as originally intended. The cases have given the remitter a remedy against the principal obligor, but the theory upon which that has been done is not entirely clear. In older cases, action was permitted in the name of the nominal payee for the benefit of the remitter. In *Utica Bank* v. *Ganson* (10 Wend. 315, 316) an action was brought in *assumpsit* in the name of the bank for the benefit of one Chad Brown. Evidence was offered that a note had been made payable to the bank; that the bank had refused to discount it; that it was given to Brown in payment of a debt. It was held that the evidence was admissible, since the holder was entitled to show that the note came into his possession fairly and for a valuable consideration.

In *Sutherland State Bank* v. *Dial* (103 Neb. 136) the bank loaned money to defendants. Defendants gave the bank a note payable to Welpton Investment Co., but the note was never delivered. It was held, in a suit in equity, that the petition set forth valid reasons why the suit was brought in the name of the plaintiff; that no one else had any real interest in the note; that plaintiff was entitled to recover. The lower court was directed to ascertain the amount due and render judgment accordingly. The action there would seem to have been one on the note for the amount due thereon.

In *Garthwaite* v. *Bank of Tulare* (134 Cal. 237) one Lovejoy purchased from defendant a check upon a San Francisco bank payable to the order of one Smith. Smith did not receive the check, but some one else presented it and was paid. Thereafter Lovejoy assigned his claim to plaintiff. It was held that the demand which had been made by Smith upon the San Francisco bank (after it had paid the fraudulent payee) was made as agent of the purchaser (Lovejoy) and the refusal to pay was dishonor. The liability of the defendant to Lovejoy was fixed in the amount originally paid by him for the check. The action there seems to have been for money had and received by defendant or for a rescission; it does not appear to be upon the note.

In *Gellert* v. *Bank of California Nat. Assn.* (107 Ore. 162) Jennie Posner, intending to make gifts to Flora Levor and E. W. Posner, bought from defendant two drafts drawn on a New York bank naming the donees as payees. The drafts were retained by Jennie Posner and were found in her possession upon her death eight days later. The action was brought by the executrix of Jennie Posner for the amount received by the bank from Jennie Posner. Plaintiff was permitted to recover. The court said (p. 171): " The paper issued by the drawer bank is sometimes called a banker's check; by business men it is usually termed a draft; but in the strict nomenclature of the negotiable instruments law it is a check, and considered as such is a species of the genus bill of exchange. * * * It must be remembered that on the facts recited by the record the drafts have not yet been presented to the drawee and that they can never be presented to the drawee by the payee. And since the estate of the decedent is the owner of the drafts the plaintiff as the legal representative of the estate is assuredly entitled to receive the moneys represented by the drafts either from the drawer or from the drawee.

\* \* \* \* \* \* \*

" The one party to whom the plaintiff can look for a return of the moneys paid for the drafts is the defendant bank. The drafts were purchased for the sole purpose of giving moneys to the payees. The instruments have not yet been delivered to the payees, nor has the drawee accepted them. No liability whatsover has thus far been incurred by the drawee. The purpose for which the drafts were purchased cannot be accomplished until and unless delivery is made to the payees. But the purchaser of the drafts died after they were issued and before delivery to the payees, and so the death of the purchaser, occurring after the issuance of the drafts, has made it forever impossible legally to accomplish the purpose for which they were purchased; and, whether the purchase of the drafts created the relation of principal and agent for the transmission of money or amounted to a contract for the sale of credit, under a well-established rule money paid for a purpose which cannot be legally accomplished because of a subsequently intervening obstacle may be recovered." That also does not seem to have been an action on the instrument, but one to recover what the

purchaser had paid, since the transaction could not be completed because of a supervening impossibility. The only difference between that case and the instant one is that there the purpose could never be accomplished, while here it may be accomplished at some indefinite time after the war.

In Chafee, " Progress of the Law — Bills and Notes," (33 Harv. L. R. 255, 263–4) it is said: " Yet a plaintiff who paid value for a negotiable note, payable to a third party, to whom the plaintiff expected to negotiate it but failed, was allowed to recover from the maker on the note. *An action in money had and received was the only proper remedy.*" (Emphasis supplied.)

In Beutel, " Rights of Remitters and Other Owners not within the Tenor of Negotiable Instruments," (*supra*) page 590, it was pointed out: " These cases might be supported, on some ground of rights arising from the transactions between the parties. As has already been pointed out, the remitter is a party to the negotiations from which the instrument arises, he has furnished the consideration for the contract, and it was contemplated that the proceeds of the instrument when discounted by the payee would be used for his benefit. In the cases where the failure of the payee to accept the instrument is the cause of the remitter's loss and creates the necessity of his action against the principal obligor, the situation is clearly analogous to failure of consideration found in ordinary contractual dealing; and one might expect the remedy to lie in quasi-contract under the category of failure of consideration. The recovery, on this theory, would be measured by the benefit received by the principal obligor and surety."

Plaintiff having delivered money to defendant which could not be used as plaintiff and defendant intended, the former should be permitted to recover. If not so permitted to do, defendant has been unjustly enriched by what may be termed a windfall resulting from the war. The remedy is an action for money had and received in which equitable principles are applied. The plaintiff has brought such an action and has had judgment.

The judgment should be affirmed, with costs.

LOUGHRAN, RIPPEY, LEWIS, DESMOND and THACHER, JJ., concur with LEHMAN, Ch. J.; CONWAY, J., dissents in opinion.

Judgment accordingly.