INTERNATIONAL FIREARMS Co., LTD., Appellant, *v.* KINGSTON TRUST COMPANY, Respondent.

Third Department, July 3, 1958.

*Hugh R. Elwyn* for appellant.

*George Rusk* and *Bernard A. Feeney, Jr.,* for respondent.

BERGAN, J. The plaintiff is a Canadian corporation and is the successor in interest to the Sportmen's Wholesale Supply, the payee of a check drawn by the defendant Kingston Trust Company on the Federal Reserve Bank of New York for $1,000. Payment was stopped by the defendant; and this action is for the recovery of the amount of the check. The court at Special Term, after a trial, has granted judgment for defendant dismissing the complaint.

The check was bought from the defendant bank by Martin B. Retting, one of defendant's depositors, and made out in the name of the plaintiff's predecessor as payee, for use by Retting in connection with a purchase by him of merchandise in Canada from the payee.

Retting sent the draft to the Royal Bank of Canada with a restrictive condition to which the payee had expressly agreed: that the check was to be held by the Royal Bank " until the shipment has been cleared through the United States Customs ".

It is adequately established that the goods contemplated by the parties as the subject of the contract for which the draft was delivered to the stakeholder Royal Bank did not clear the customs. Retting, after a reasonable time, demanded from the Royal Bank the return of the draft; this was not complied with; and the plaintiff, having succeeded to the payee's interest, brought an action in rem in Canada and obtained a judgment in pursuance of which the draft was seized and came into plaintiff's possession.

Thus possessed of the draft, plaintiff presented it for payment at the drawer bank; payment was refused because defendant had stopped payment and this action against the defendant followed. It is conceded that the payment was stopped by mutual agreement of the defendant and Retting as the purchaser of the draft.

Although a bank draft, purchased for a good consideration, is treated as a purchase of credit and of the bank's promise to pay, and is thus regarded to be contractually complete as between the purchaser and the bank and not revocable unilaterally by the bank as drawer, the party asserting a liability against the bank on the draft is required, at least, to show a valid legal title to it and a right to enforce the contractual obligation.

The authorities relied upon by the appellant do not deal with the title of the payee to the draft; but rather with the general rule that after a bank draft is issued the transaction is complete and in this respect is similar to a cashier's check. (*Bobrick* v. *Second Nat. Bank*, 175 App. Div. 550.) The decisions cited by appellant in *Kerr S. S. Co.* v. *Chartered Bank of India, Australia & China* (292 N. Y. 253, 266) and in *Munn* v. *Boasberg* (292 N. Y. 5, 9) turned on other issues, but by way of comparison the general rule affecting the irrevocable nature of bank drafts was discussed in the opinions and both made reference in this connection to *Armstrong* v. *American Exch. Bank* (133 U. S. 433, 453).

That case does not hold that the drawer of such a bank draft is not entitled to any defense; it holds that a want of consideration cannot be shown by the issuing bank; but this applies to a case where the payee is a bona fide holder for value (p. 453). It certainly does not hold that the party suing on the draft need not show he has a good title.

Here it could be found that the plaintiff is not a bona fide holder; that it has obtained possession of the draft in violation of the specific conditions, to which its predecessor in title had agreed, under which it was delivered to the Royal Bank as stakeholder. The in rem judgment to which defendant was not a party is not an adjudication which, as against defendant, converts plaintiff's wrong into a good faith possession of the paper.

On the trial here the court found the plaintiff's title to the instrument is defective; and this, certainly, is a defense available to the drawer, even though its obligation is deemed generally irrevocable as against a holder in due course or even as against a possessor not a holder in due course showing a good title.

The judgment is consistent with the decision in this court in *Hurley* v. *Union Trust Co.* (244 App. Div. 590). There the defendant bank issued three checks drawn upon another bank payable to a named payee for a good consideration given

by a purchaser of the draft and delivered by the purchaser to the payee. The invalidity of the transaction between the purchaser of the draft and the payee was held a defense available to the bank, i.e., that the payee did not have an enforcible title. Decisions such as *Schweitzer* v. *Fargo* (255 N. Y. 60) and *Gravenhorst* v. *Zimmerman* (236 N. Y. 22), relied upon, decided other questions; but they did not decide this one.

Nor is it entirely clear that the contract by which the credit was purchased, which the courts treat as "irrevocable" and "complete" in the sense it cannot be rescinded by one of them, is a contract which cannot be cancelled by mutual consent. The payee of the draft is not a party to the contract in pursuance of which the draft was issued.

What he has is commercial paper which gives him well-understood rights; and he looks for his remedy to the paper he holds and not to the agreement between purchaser and drawer which is no part of the paper or of any instrument accompanying the paper and to which he is not a party.

On the other side of the case, touching on the liability of the bank as drawer, its responsibility is fixed by statute; it must pay a holder in due course and for value; and it cannot show an absence of consideration in the issuance of the draft; and where the party seeking to collect it is not a holder in due course, the bank may show other defenses, one of which is, at least, the holder's title to the draft is defective. Plaintiff is certainly not a holder in due course; and the court at the trial was justified in holding that it had not established such a title as would justify recovery. The general rule has been stated to be that a bank draft "may be rescinded by mutual agreement of the purchaser and seller" (9 C. J. S., Banks & Banking, § 173, p. 381); but it is added, "not ordinarily at the behest of one party alone", citing *Moe* v. *Bank of United States* (211 App. Div. 519). The decision of the Iowa Supreme Court (*Runge* v. *Benton,* 205 Iowa 845) is consistent with our view on this aspect of the case.

The judgment should be affirmed, with costs.

Coon, J. (dissenting). I vote to reverse and to grant judgment to the plaintiff for the sum of $1,000, with interest from the date of the dishonor of the draft.

The facts are succinctly set forth in the majority opinion but, in my view, need some additions. It is undisputed that the draft was unconditional. The defendant bank was no party to the controversy between Retting and plaintiff's predecessor. While I think that this controversy is immaterial and that the

bank's liability is defined by section 111 of the Negotiable Instruments Law, in view of the majority opinion I must refer to some additional facts.

The record clearly indicates that Retting realized shortly after he had contracted for the merchandise that he had made a "bad bargain" and any delay thereafter was due to him. A court of general jurisdiction where the contract was made and which clearly had jurisdiction "in rem" of the draft involved here, has decided that Retting is the one who breached the contract and has awarded the plaintiff title to and possession of the draft. The defendant bank should not have assumed any interest in the controversy between Retting and the plaintiff. When they did and repaid Retting the money is where the mistake was made. They were not obliged to repay him and could not be legally compelled to repay him. (*Schweitzer* v. *Fargo,* 255 N. Y. 60.) The bank apparently recognized this because they exacted from Retting an indemnity agreement (then good but now worthless).

A bank draft is irrevocable once issued and delivered. (*Kerr S. S. Co.* v. *Chartered Bank of India, Australia & China,* 292 N. Y. 253.) While the majority opinion suggests that the *Kerr* case decides some things but not the question of title, I think it squarely decides that a bank draft is irrevocable. Here the bank attempted to revoke it. When the named payee presented the draft for payment, with no intervening transfer, in the absence of fraud or theft or forgery, none of which are claimed here, the drawer was obligated to honor it. In the absence of a claim of false identity there is no burden upon a named payee of a draft to establish his title or his being a "holder in due course."

The defendant bank had nothing whatever to do with the merits of any controversy between Retting and plaintiff. It had nothing to do with the Canadian judgment. It did have an absolute obligation to pay its draft upon presentment. To permit the drawer of a bank draft to stop payment upon the unilateral request of the purchaser, without the consent of the payee or the physical return of the draft, would completely destroy the usefulness of a bank draft as a means of safe transmittal of cash. If payment could be stopped in this manner, a bank draft would be no more acceptable in commerce than a personal check, although for years, in commercial and banking circles, it has been an established custom to treat a bank draft as the equivalent of cash. (See *Kohler* v. *First Nat. Bank of Tonasket* (157 Wash. 417.)

HERLIHY, J. (dissenting). I concur in the dissent of COON, J., together with the following statement.

If my concept of "bank draft" is correct, unless there be restrictions or limitations upon the face thereof or by way of indorsement, the payee is entitled to payment absolute upon its presentation to the bank. This is the accepted practice in banking and money circles and if the majority opinion prevails, it will of necessity create many difficulties and complications. In fact, a "bank draft" will have little more significance than an ordinary check.

What may have caused the complications and difference of opinion in this particular case is the manner of pleading by plaintiff in setting forth in the complaint the various allegations with reference to what happened *after* the bank draft was delivered to the remitter and which to my way of thinking, was not a necessary or material part of the pleadings. The exhibits disclose that the defendant stopped payment on the bank draft as the result of a letter from the remitter in which he gave no reason or explanation for the same but assured the bank that in the event of liability, he would indemnify them.

When the bank at the request of its customer issued the said draft, it said to its customer and to the payee that upon proper presentation by the said payee, they would without condition or without qualification pay the face amount of the said draft. There was no obligation on the part of the bank to make any investigation. In fact, it has been held that the remitter is not entitled to the return of his money upon presentation of the draft without the signature of the payee.

In *Kerr S. S. Co.* v. *Chartered Bank of India, Australia & China* (292 N. Y. 253) the court said (pp. 260, 261): "The rule is *authoritatively established* and *universally recognized* that the transfer of a draft in exchange for moneys paid for the delivery of the draft is an executed transaction characterized generally as a ' purchase and sale ' of the draft. Such a transaction may not be rescinded by the purchaser when ' supervening war ' delays indefinitely presentment and payment of the draft." (Emphasis supplied.)

The cases cited in the majority opinion are clearly distinguishable. *Armstrong* v. *American Exch. Bank* (133 U. S. 433, 453) concerned an entirely different form of negotiable instrument known as a foreign bill of exchange and because of the nature of the particular instrument, various matters of notice and other conditions were attached thereto which would not apply to the "bank draft" here in question.

The Kingston Trust Company, to accommodate one of its customers, refused to honor its own draft and did so without justification in law or in equity and at its own risk.

In my opinion, the judgment and order in the lower court should be reversed.

FOSTER, P. J., and REYNOLDS, J., concur with BERGAN, J.; COON, J., dissents, in a memorandum in which HERLIHY, J., concurs in a separate memorandum.

Judgment affirmed, with costs.