111 N.J. Super. 347 (1970)
268 A.2d 327
NATIONAL NEWARK & ESSEX BANK, A NATIONAL BANKING ASSOCIATION OF THE UNITED STATES, PLAINTIFF,
v.
ANTHONY GIORDANO, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 15, 1970.
*349 Mr. Samuel A. Christiano, for plaintiff.
Mr. Monroe Jay Lustbader, for defendant (Messrs. Lustbader & Lustbader, attorneys).
SUGRUE, J.C.C. (temporarily assigned).
This case involves a suit on an installment sale and security agreement. Defendant agreed to purchase two trucks for use in his business from Joseph Fiero. To enable him to do so, plaintiff agreed to lend him $9500. Defendant signed an installment sale security agreement which recited that plaintiff would lend him $9500, which he agreed to repay in 24 equal consecutive monthly installments of $443.33, commencing November 16, 1967. The contract is dated October 13, 1967. Defendant was to have the use and possession of the trucks in his business and plaintiff retained a security interest in the trucks and a right to retake in case of default by defendant.
On October 13, 1967 plaintiff issued its check by Anthony Dondona, its assistant vice-president, in the amount of $9500 payable to the order of Joseph Fiero. Defendant delivered the check to Fiero on October 15, 1967. On October 16, 1967, when defendant first discovered the trucks were defective, he requested plaintiff to stop payment on its check to Fiero. The bank refused, claiming it could not stop payment on its own check. Defendant offered to post *350 a bond to protect the bank, but this did not dissuade plaintiff from its position.
The check, in addition to Fiero's endorsement, bears an out-of-state bank endorsement dated October 18, 1967 and subsequent endorsements.
On breach of the installment sale and security agreement the trucks were subsequently repossessed by plaintiff and sold at public auction for $1500. At the time of repossession one truck was missing its tires, wheels and brakes, and the transmission was jammed on the other. The trucks were sold for their parts value only. Plaintiff has demanded judgment for the amount due on the agreement, plus interest and costs.
The factual summary of the case is not in dispute. The primary issue raised is whether a bank may stop payment on its own check.
The question does not appear to have been decided in this State but there is a clear weight of authority in other jurisdictions which denies a bank the right to countermand tis own check. Causey v. Eiland, 175 Ark. 929, 1 S.W.2d 1008, 56 A.L.R. 529 (Sup. Ct. 1928).; United States v. Milton, 382 F.2d 976 (6 Cir.1967).
A check drawn by the bank upon itself is commonly referred to as a cashier's check. It is issued by an authorized officer of a bank, directed to another person, evidencing the fact that the payee is authorized to demand and receive from the bank, upon presentation, the amount of money represented by the check. Thus, even though the check is drawn by an authorized officer rather than the cashier, it is legally the equivalent of a cashier's check. The check here in question is one drawn by an authorized officer and will be designated herein as a cashier's check.
A cashier's check is a bill of exchange drawn by the bank upon itself. 10 Am. Jur.2d Banks, § 544, at 518. When a bank issues a cashier's check it becomes primarily obligated to pay the amount represented upon presentation. Scharz v. Twin City State Bank, 201 Kan. 539, 441 P.2d *351 897 (Sup. Ct. 1968). The transaction is not executory but rather an executed transaction of purchase and sale. It is a sale of credit by the bank to the purchaser. Kerr S.S. Co. Inc. v. Chartered Bank of India, etc., 292 N.Y. 253, 54 N.E.2d 813, 153 A.L.R. 382 (Ct. App. 1944). The bank thus becomes a debtor and the purchaser a creditor. Schulze v. Rayunec, 350 F.2d 666 (7 Cir.1965), cert. den. Boughner v. Schulze, 382 U.S. 919, 86 S.Ct. 293, 15 L.Ed.2d 234. The purchaser's obligation on the check becomes secondary and the bank is both the drawer and drawee. It undertakes to draw the amount represented from its own resources. It must theerfore of necessity be said that issuance of the cashier's check constitutes an acceptance of it by the issuing bank. In drawing the instrument the bank represents that as drawee it will honor the draft when presented. The requirements for an acceptance as set forth in N.J.S.A. 12A:3-410(1) are fulfilled by the affixing of the signature of the agent of the issuing bank. The rule may thus be stated that a cashier's check is accepted for payment when issued. See Mellon National Bank v. Citizens Bank & Trust Co., 88 F.2d 128 (8 Cir.1937), cert. den. 302 U.S. 702, 58 S.Ct. 21, 82 L.Ed. 542.
Under the provisions of N.J.S.A. 12A:4-303 a stop-order, whether or not effective under other rules of law to terminate or suspend the bank's right or duty to pay an item, comes too late to terminate or suspend such right or duty if it is received after the bank has accepted or certified the item. Since a cashier's check is accepted when issued, N.J.S.A. 12A:4-303 in effect makes it impossible to stop payment on a cashier's check once it has been issued.
In addition to the statutory prohibition against stopping payment on a cashier's check, the nature and usage of these checks require such a rule. A cashier's check circulates in the commercial world as the equivalent of cash. Scharz, supra. People accept a cashier's check as a substitute for cash because the bank stands behind it, rather than an individual. In effect, the bank becomes a guarantor of *352 the value of the check and pledges its resources to the payment of the amount represented upon presentation. To allow the bank to stop payment on such an instrument would be inconsistent with the representation it makes in issuing the check. Such a rule would undermine the public confidence in the bank and its checks and thereby deprive the cashier's check of the essential incident which makes it useful. People would no longer be willing to accept it as a substitute for cash if they could not be sure that there would be no difficulty in converting it into cash.
In support of his position defendant relies on N.J.S.A. 12A:4-403, which is entitled "Customers Right to Stop Payment." The section authorizes a customer to order the bank to stop payment of any item payable for his account. A cashier's check is not one payable for the customer's account but rather for the bank's account. As stated above, it is the bank which is primarily obligated on the check, not the customer. Scharz, supra.
Defendant further relies on Citizens Nat'l Bank of Englewood v. Ft. Lee S. & L. Ass'n, 89 N.J. Super. 43, 213 A.2d 315 (Law Div. 1965). That case, however, involved a "bank check" drawn by one bank on its account in another bank, rather than a cashier's check as in the case at bar. The distinction between these was pointed out in Causey v. Eiland, supra. The principal difference insofar as the present case is concerned is that a "bank check" is, in effect, an ordinary check since it is not accepted when issued and may be dishonored by the bank upon which it is drawn when it is presented for payment. This difference undermines the basic defense offered by defendant at trial. Defendant's offer to post a bond to insure plaintiff that it would not be damaged by stopping payment on the check is no defense to plaintiff's action. The bank could not stop payment on its cashier's check as a matter of law. The proofs showing that the bank received notice prior to the cashing of the check are likewise of no avail to defendant. Regardless of the *353 length of time available to the bank, it still was without authority to stop payment.
Defendant's answer urges failure of consideration and fraudulent misrepresentation by the seller of the trucks as additional defenses. Assuming both to be true, neither is a good defense to the present action. This action is a suit on an installment sale and security agreement executed by defendant. It is not contested here that he received the cashier's check and delivered it to the payee, nor is it asserted that fraud was practiced by plaintiff in this transaction. Any alleged fraud of which defendant was a victim was practiced by the seller of the trucks in inducing defendant to purchase them. Plaintiff is not chargeable with this fraud. Any remedy defendant may have, based on lack of consideration or fraud, must be sought from the seller of the trucks, who is not a party to this suit.
Judgment will be entered in favor of plaintiff and against defendant in the amount of $10,841.60.