**Edda KAUFMAN, Plaintiff,**

v.

**The CHASE MANHATTAN BANK, NATIONAL ASSOCIATION, Defendant.**

**No. 71 Civ. 60 (DNE).**

United States District Court, S. D. New York, Civil Division.

Oct. 16, 1973.

See also D.C., 370 F.Supp. 279.

Sidney Tolmage, Tolmage & Harris, New York City, for plaintiff.

Samuel Halpern, Konheim, Halpern & Bleiwas, New York City, for defendant.

1. Plaintiff is a resident of New Jersey; defendant is a federally chartered national bank duly authorized to do business in the State of New York. The suit was instituted in New York Supreme Court, New York County. Defendant removed the action to this court pursuant to 28 U.S.C. § 1441(a).

2. The parties and the court agree that the terms "official bank check" and "cashier's check" are to be considered synonymous and of the same legal force and effect. (*See* copy of defendant's deposition attached to plaintiff's moving papers (hereinafter referred to as defendant's deposition) at 16.)

## OPINION

EDELSTEIN, Chief Judge:

Plaintiff, Edda Kaufman, has moved for summary judgment, pursuant to F. R.Civ.P. 56, in her suit to recover the face amount, plus interest and costs, of an official bank check issued by defendant, The Chase Manhattan Bank, National Association. Jurisdiction is predicated upon 28 U.S.C. § 1332 (1970) because plaintiff and defendant are citizens of different states, and the amount in controversy, exclusive of interest and costs, exceeds $10,000.[1]

The court has reviewed the record in this case and has found that there is no genuine issue as to any material fact. Accordingly, this is an appropriate action for summary judgment. The facts can be summarized as follows. On February 10, 1970, defendant bank properly issued a cashier's check[2] payable to the order of the plaintiff in the sum of $17,000. The check was issued at the request of a Chase depositor, Ahmed Tigani, and in reliance upon his account.[3] Subsequently, the check was delivered to plaintiff[4] who deposited it in her bank (the Livingston National Bank of Livingston, New Jersey). On February 14, 1970, plaintiff was notified by her bank that payment of the cashier's check had been stopped by defendant Chase. The check was then returned to plaintiff who thereafter made repeated, but futile, demands upon defendant for payment.

The issue presented to this court is whether or not a bank may stop pay-

3. It should be noted that when the cashier's check was authorized and issued, there were sufficient funds in Tigani's account to cover the amount of the check. (*See* defendant's deposition at 6, 10–11.)

4. Defendant contends that the cashier's check was delivered to plaintiff on February 13, 1973; plaintiff contends that it was delivered on February 10, 1973. Be that as it may, delivery is not disputed, and the actual date thereof is immaterial for purposes of this motion.

ment on a cashier's check which has been properly issued by the bank and has been delivered to the payee. The issue must be resolved in favor of the payee.

New York courts have long recognized the significant difference between an ordinary check and a cashier's check, Matter of Bank of United States, 243 App. Div. 287, 291, 277 N.Y.S. 96, 100 (1935). An ordinary check is an order by one party (drawer) directing a second party (drawee) to pay, on demand, a fixed sum of money to a third party (payee). N.Y.U.C.C. § 3–104, McKinney's Consol. Laws, c. 38. The drawer is primarily liable to the payee for the amount of the check until that check has been accepted by the drawee. N.Y.U.C.C. § 3–410(1). Payment on the check may be stopped by the drawer only if the drawee receives notice prior to acceptance. N.Y. U.C.C. §§ 4–403, 4–303.

█ A cashier's check, however, is a check drawn by the bank upon itself, payable to another person, and issued by an authorized officer of the bank. The bank, therefore, becomes both the drawer and drawee; and the check becomes a promise by the bank to draw the amount of the check from its own resources and to pay the check upon demand. Thus, the issuance of the cashier's check constitutes an acceptance by the issuing bank;[5] and the cashier's check becomes the primary obligation of the bank. Bunge Corporation v. Manufacturers Hanover Trust Co., 65 Misc.2d 829, 318 N.Y.S.2d 819, rev'd on other grounds, 37 A.D.2d 409, 325 N.Y.S.2d 983 (1971), aff'd, 31 N.Y.2d 223, 335 N.Y.S.2d 412, 286 N.E.2d 903 (1972); *Matter of Bank of United States, supra*; Bobrick v. Second National Bank of Hoboken, 175 App.Div. 550, 162 N.Y.S. 147 (1916), aff'd, 224 N.Y. 637, 121 N.E. 856 (1918). Since a cashier's check is a

bank's primary obligation, a cashier's check is presumed to have been issued for value. This presumption cannot be overcome by evidence that the bank did not receive consideration for the cashier's check from the payee. Such proof is irrelevant and provides no defense. Bunge Corporation v. Manufacturers Hanover Trust Co., *supra*, 65 Misc.2d at 834–835, 318 N.Y.S.2d at 829; Bobrick v. Second National Bank of Hoboken, *supra*. Hence, once the cashier's check has been issued and delivered to the payee, the transaction is complete so far as the payee is concerned. Any failure of the bank to charge such checks against the account of the depositor or to take other action to protect its own rights and interests will not affect the unconditional right of payment inuring to the payee. Bunge Corp. v. Manufacturers Hanover Trust Co., *supra*, 65 Misc.2d at 834–835, 318 N.Y.S.2d at 829; Bobrick v. Second National Bank of Hoboken, *supra*, 175 App.Div. at 553, 162 N.Y.S. at 149.

█ Furthermore, under N.Y.U.C.C. § 4–303, a stop-order comes too late if the order is received after the bank has accepted the item. Thus, because a cashier's check is accepted when issued, it is beyond the power of the bank to stop payment on it. *See* National Newark & Essex Bank v. Giordano, 111 N.J. Super. 347, 268 A.2d 327 (1970). *Cf.* Garden Check Cashing Service, Inc. v. First National City Bank, 25 A.D.2d 137, 139–140, 267 N.Y.S.2d 698, 701, aff'd, 18 N.Y.2d 941, 277 N.Y.S.2d 141, 223 N.E.2d 566 (1966); Rose Check Cashing Service, Inc. v. Chemical Bank New York Trust Co., 43 Misc.2d 679, 681, 252 N.Y.S.2d 100, 102 (1964).

█ Finally, because of the nature and usage of cashier's checks in the commercial world, public policy favors a rule which prohibits the stopping of payment

---

5. It has also been stated that the signature of an authorized employee of the issuing bank constitutes acceptance under N.Y.U.C.C. § 3–410(1), which states in part:

    Acceptance is the drawee's signed engagement to honor the draft as presented.

It must be written on the draft, and may consist of his signature alone.

*See, e. g.,* National Newark & Essex Bank v. Giordano, 111 N.J.Super. 347, 268 A.2d 327 (1970).

---

of these checks. As one court has aptly stated:

> A cashier's check circulates in the commercial world as the equivalent of cash . . . . People accept a cashier's check as a substitute for cash because the bank stands behind it, rather than an individual. In effect, the bank becomes a guarantor of the value of the check and pledges its resources to the payment of the amount represented upon presentation. To allow the bank to stop payment on such an instrument would be inconsistent with the representations it makes in issuing the check. Such a rule would undermine the public confidence in the bank and its checks and thereby deprive the cashier's check of the essential incident which makes it useful. People would no longer be willing to accept it as a substitute for cash if they could not be sure that there would be no difficulty in converting it into cash.

National Newark & Essex Bank v. Giordano, *supra*, 268 A.2d at 329.

Accordingly, plaintiff's motion is granted.

Settle order on notice.