489 So.2d 388 (1986)
FIRST FINANCIAL L.S.L.A.
v.
FIRST AMERICAN BANK AND TRUST COMPANY.
No. 86-CA-12.
Court of Appeal of Louisiana, Fifth Circuit.
May 12, 1986.
Writ Denied September 8, 1986.
Thomas J. Kliebert, Jr., Gramercy, for plaintiff-appellee.
Malcolm J. Peytavin, Anthony J. Nobile, Lutcher, for defendant-appellant.
Before CHEHARDY, GAUDIN and WICKER, JJ.
WICKER, Judge.
This appeal arises from a suit brought by one bank against another for an alleged wrongful stop payment of a cashier's check. First Financial L.S.L.A. (First Financial) filed suit against First American Bank (First American), seeking payment of a cashier's check issued by First American to First Financial in the amount of Eighteen Hundred Dollars ($1,800.00). First American issued its cashier's check in exchange for a personal check on which a stop payment order had been executed. After the matter was submitted to the trial court in the form of joint stipulations of fact, the trial judge rendered judgment in favor of First Financial and against First American in the amount of the cashier's check. First American now appeals the judgment, asserting as error the trial court's refusal to recognize the stop payment order on its cashier's check. We affirm.
On Friday, May 3, 1985, Mrs. Tommy Marzoni, a customer of First American deposited a personal check in the amount of Eighteen Hundred Dollars ($1,800.00) into First Financial. The check was drawn on her account at First American. On that same date, she spoke to Cindy Pilgram, an employee of First American, and informed her that she wished to stop payment on her personal check. She was informed, however, that she would have to place her request in writing. Consequently, she appeared at First American on Monday, May 6, 1985 at 9:00 a.m. to institute the stop *389 payment order. On that same date, subsequent to her written request, but prior to the time at which all window tellers could be informed of the order, one of First Financial's employees appeared at First American and presented the personal check to Gloria Detillier, a cashier at First American, and requested a cashier's check in exchange. Such a check in the amount of Eighteen Hundred Dollars ($1,800.00) was issued by First American in exchange for Mrs. Marzoni's personal check.
Shortly thereafter, the employees of First American learned of the stop payment order on the personal check and immediately notified First Financial that the bank would not honor the cashier's check. On Tuesday, May 7, 1985, First American issued a stop payment order on its cashier's check. Prior to that order reaching First Financial, it credited the amount to pay off a loan in the name of Mr. Tommy Marzoni and to credit the account of Mrs. Marzoni with the remaining funds. The amount so credited to the account was subsequently withdrawn prior to the stop payment order on the cashier's check reaching First Financial.
Appellant, First American, asserts the following specifications of error:
1. The district court judge was clearly in error in his interpretation of the precedent he relied upon in the instant case, and
2. The trial judge's ruling was in error as a matter of law under Louisiana Negotiable Instruments Law.
This appeal presents questions of first impression in this jurisdiction, namely, whether a bank can stop payment on its cashier's check and whether it can assert a defense of failure of consideration in that payment on the personal check accepted in exchange for the cashier's check had been stopped.
Appellant contends that the trial judge misinterpreted the precedent upon which he relied. The trial judge relied on Rezapolvi v. First National Bank of Maryland, 296 Md. 1, 459 A.2d 183 (Md.App. 1983), an out-of-state case. Whether or not the trial judge correctly construed Rezapolvi is of no moment since we find no fault with his conclusion for the reasons discussed below. Moreover, appellant's second claim that the trial judge's ruling was contrary to Louisiana Negotiable Instruments Law cannot be addressed without first determining the proper legal analysis for the res nova issue presented herein.
Louisiana's version of Articles 1, 3, 4 and 5 of the Uniform Commercial Code (U.C.C.) and Articles 7 and 8 is contained in L.S.A.-R.S. 10:1-101 et seq. Our version is similar to that of the U.C.C. in that it also has only one reference to cashier's checks. L.S.A.-R.S. 10:4-211 provides in pertinent part that:
"1) A collecting bank may take in settlement of an item ...
(b) a cashier's check or similar primary obligation of a remitting bank which is a member of or clears through a member of the same clearing house or group as the collecting bank ..." [Emphasis supplied]
A review of our Louisiana jurisprudence reveals that no court has specifically addressed the issue of whether a bank can stop payment on its own cashier's check. In Nielsen v. Planters Trust and Savings Bank of Opelousas, 183 La. 645, 164 So. 613 (1935) the Louisiana Supreme Court apparently assumed that a bank could refuse payment on its own cashier's check. However, the Nielsen case occurred prior to the adoption of our version of the U.C.C. We adopted Articles 1, 3, 4 and 5 in 1974 and Articles 7 and 8 in 1978. Thus, the Louisiana Supreme Court did not have the benefit of our commercial laws and simply assumed that the cashier's check was a negotiable instrument. In Nielsen, the plaintiff sued the bank which had issued a cashier's check to him for the recovery of the amount of the cashier's check. Plaintiff had deposited his pay check into the bank and had requested and received a cashier's check made payable to his order. He subsequently endorsed the check and delivered it in payment of gambling losses. Thereafter, he notified the issuing bank to refuse to pay the check, asserting that the *390 transferee of the check was not a holder in due course since gambling debts constitute illegal consideration. The bank then raised the exception of no right or cause of action and the Nielsen court held that plaintiff's petition stated a right or cause of action.
One commentator has indicated that part of what makes this case peculiar is that "the check in question was a cashier's check drawn by the defendant bank on itself." R.L. Hersbergen. Commercial Paper and Bank Deposits and Collection, 39 La.L.Rev. 753 (1979). Thus, the Louisiana Supreme Court failed to take into consideration the peculiar nature of cashier's checks as opposed to ordinary checks.
Furthermore, the Nielsen court stressed the strong public policy whereby our courts prohibit the collection of debts which are unlawful or contrary to public order or morals. See, e.g. Tipton v. Loker, 230 So.2d 125 (La.App. 1st Cir.1969); Lillis v. Perez, 144 So.2d 455 (La.App. 4th Cir.1962); and Wilson v. Sawyer, 106 So.2d 831 (La. App. 2d Cir.1958). The jurisprudential rule that "a contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral" has been recently codified in L.S.A.-C.C. Art. 2030 (Supp.1985).
The policy consideration of an illegal debt is not at issue in the case at bar. There is, however, another public policy consideration which does exist in the instant case and which was not addressed by the Louisiana Supreme Court in Nielsen, supra. This consideration will be discussed below.
Since Louisiana law does not address the issue of whether a bank can stop payment on its cashier's check or whether it can assert the defense of failure of consideration, we now turn to a view of other jurisdictions to determine their treatment of such a check.
The majority of jurisdictions define a cashier's check as a substitute for cash. See generally L. Lawrence, Making Cashier's Checks and Other Bank Checks Cost Effective: A Plea For Revision of Articles 3 and 4 of the Uniform Commercial Code, 64 Minn.L.Rev. 273 (1980) [hereinafter cited as Lawrence, Cashier's Checks] See also In re Johnson, 552 F.2d 1072 (4th Cir. 1977); Swiss Credit Bank v. Virginia National Bank, 538 F.2d 587 (4th Cir.1976); Munson v. American National Bank and Trust Co., 484 F.2d 620 (7th Cir.1973); Kaufman v. Chase Manhattan Bank, 370 F.Supp. 276 (S.D.N.Y.1973); State ex rel. Chan Siew Lai v. Powell, 536 S.W.2d 14 (Mo.1976); Moon Over the Mountain, Ltd. v. Marine Midland Bank, 87 Misc.2d 918, 386 N.Y.S.2d 974 (Civ.Ct.N.Y.1976); Wertz v. Richardson Heights Bank and Trust, 495 S.W.2d 572 (Tex.1973); State of Pennsylvania v. Curtiss National Bank of Miami Springs, Fla., 427 F.2d 395 (5th Cir. 1970); Da Silva v. Sanders, 600 F.Supp. 1008 (D.C.Cir.1984).
Most of the courts which follow the majority view disallow defenses on the part of the issuing bank. See generally, Lawrence, Cashier's Checks; See also National Newark & Essex Bank v. Giordano, 111 N.J.Super. 347, 268 A.2d 327 (1970); State ex rel. Chan Siew Lai v. Powell, supra, and United States v. Milton, 382 F.2d 976 (6th Cir.1967).
New York courts in particular have favored a rule which opposes the stopping of payment of a cashier's check. In Kaufman, supra, the court summarized New York law as having accorded a special status to a cashier's check as follows:
[a]n ordinary check is an order by one party (drawer) directing a second party (drawee) to pay, on demand, a fixed sum of money to a third party (payee). [t]he drawer is primarily liable to the payee for the amount of the check until that check has been accepted by the drawee. [p]ayment on the check may be stopped by the drawer only if the drawee receives notice prior to acceptance ...

A cashier's check, however, is a check drawn by the bank upon itself, payable to another person, and issued by an authorized officer of the bank. The bank, therefore, becomes both the drawer and drawee; and the check becomes a promise by the bank to draw the *391 amount of the check from its own resources and to pay the check upon demand. Thus, the issuance of the cashier's check constitutes an acceptance by the issuing bank; and the cashier's check becomes the primary obligation of the bank ... [Citations omitted; emphasis supplied] Id. at 278
In Kaufman, supra, a cashier's check was presumed to have been issued for value and this presumption could not be overcome by evidence that the bank did not receive consideration. The court found that the bank was both the drawer and the drawee of the check and that upon issuance the bank promised to pay the check upon demand from its own resources. The Kaufman court looked to the public policy regarding the nature and usage of cashier's checks in the commercial world and the fact that such a policy would favor a rule which prohibits the stop payment of a cashier's check.
The rationale behind an approach which treats cashier's checks as cash equivalents is explained in the leading case of National Newark & Essex Bank, supra as follows:
[a] cashier's check circulates in the commercial world as the equivalent of cash... People accept a cashier's check as a substitute for cash because the bank stands behind it, rather than an individual. In effect the bank becomes a guarantor of the value of the check and pledges its resources to the payment of the amount represented upon presentation. To allow the bank to stop payment on such an instrument would be inconsistent with the representation it makes in issuing the check. Such a rule would undermine the public confidence in the bank and its checks and thereby deprive the cashier's check of the essential incident which makes it useful. People would no longer be willing to accept it as a substitute for cash if they could not be sure that there would be no difficulty in converting it into cash ... Id. 268 A.2d at 329.
In contrast, a minority of the jurisdictions look to the status of the instrument and view the cashier's check as a negotiable instrument. See Generally Lawrence, Cashier's Checks, supra. Of this minority, most of these courts view it as a bank draft, see, e.g. Swiss Credit Bank v. Virginia National Bank, 538 F.2d 587 (4th Cir.1976); Munson v. American National Bank & Trust Co., 484 F.2d 620 (7th Cir. 1973); State of Pennsylvania v. Curtiss National Bank, 427 F.2d 395 (5th Cir. 1970); while the others view it as a negotiable promissory note. See, e.g. Equitable Trust Co. v. G & M Construction Corp., 544 F.Supp. 736 (D.Md.1982). TPO Inc. v. FDIC, 487 F.2d 131 (3rd Cir.1973) and Banco Ganadero y Agricola v. Society National Bank, 418 F.Supp. 520 (N.D.Ohio 1976).
These courts, however, do recognize the validity of certain defenses to payment. In the instant case, appellant raises the defense of lack of consideration. It contends that since it issued a cashier's check for a personal check which it subsequently learned had a stop payment order, it received no consideration and thus can assert this defense. It relies on the legal analysis which treats the cashier's check as a negotiable instrument subject to the defenses relative to a holder or a holder in due course. See L.S.A.-R.S. 10:3-305 and 10:3-306. See, also Wilmington Trust Company v. Delaware Auto Sales, 271 A.2d 41 (Del.1970).
We adhere to the majority view that a cashier's check is a substitute for cash or a cash equivalent. Moreover, we adopt the analysis used by several courts of applying U.C.C. Section 4-303(1)(a) to prohibit a bank from asserting a defense to payment of a cashier's check. See, e.g. Da Silva v. Sanders, 600 F.Supp. 1008 (D.C.1984); Kaufman v. Chase Manhattan Bank, supra; State ex rel. Chan Siew Lai, supra; National Newark, supra, and Wertz v. Richardson Heights Bank & Trust, 495 S.W.2d 572 (Tex.1973). These courts consider the bank as having accepted a cashier's check upon its issuance of the check.
In Kaufman, supra, the court held that:

*392 [s]ince a cashier's check is a bank's primary obligation, a cashier's check is presumed to have been issued for value. This presumption cannot be overcome by evidence that the bank did not receive consideration for the cashier's check from the payee. Such proof is irrelevant and provides no defense. [Citations omitted] Id. at 278.
By its act of issuing the cashier's check, the bank undertakes a primary obligation to pay the amount when presented. Scharz v. Twin City State Bank, 201 Kan. 539, 441 P.2d 897 (Sup.Ct.1968). In particular, it undertakes the obligation to pay the amount from its own resources. See National Newark, supra.
The applicable section in our statute is L.S.A.-R.S. 10:4-303(1)(a) which provides that:
"(1) Any knowledge, notice or stop-order received by, legal process served upon or setoff exercised by a payor bank, whether or not effective under other rules of law to terminate, suspend or modify the bank's right or duty to pay an item or to charge its customer's account for the item, comes too late to so terminate, suspend or modify such right or duty if the knowledge, notice, stop-order or legal process is received or served and a reasonable time for the bank to act thereon expires or the setoff is exercised after the bank has done any of the following: (a) accepted or certified the item ..."
Accordingly, since L.S.A.-R.S. 10:4-303(1)(a) disallows stop payment orders on accepted items, the bank cannot issue a stop payment order on its cashier's check. Thus, any defenses allowed in L.S.A.-R.S. 10:3-305 and 306 relative to the status of holder or holder in due course do not apply. See, e.g. Da Silva, supra; Swiss Credit Bank, supra; State ex rel. Chan Siew Lai, supra and Wertz, supra. Moreover, the court in Kaufman, supra, felt that the bank could have protected itself by ensuring that it had received payment before issuing. See also National Newark, supra.
Considering the law and the views expressed, we hold that a cashier's check is a cash equivalent and therefore a bank is prohibited from issuing a stop payment order on its own cashier's check for failure of consideration. Therefore, we agree with the trial court's conclusion casting the issuing bank in judgment in the amount of its cashier's check.
For the foregoing reasons, the judgment of the trial court is affirmed. Appellant is to pay costs.
AFFIRMED.