CRAIN, Judge.
On September 21,1987, Terrebonne Bank and Trust Company of Houma, Louisiana, entered into a consent judgment of garnishment with Whittaker Metals, Inc. to garnish the checking account of judgment debtor, Atlantic Pacific Industries, Inc. (Atlantic Pacific). Atlantic Pacific’s account balance on that date was $19,319.15.
Sonja Babin, a Terrebonne Bank employee, received the consent judgment of garnishment at approximately 3:00 p.m. on September 21, 1987. Mrs. Babin worked at the main bank and programmed the information into the computer. She immediately thereafter notified Barry Benoit, President and majority shareholder of Atlantic Pacific of the garnishment.
On the morning of September 22, 1987, Barry Benoit and Michael M. Benoit presented at the Prospect Branch of Terre-bonne Bank. Michael Benoit is the brother of Barry Benoit, the sole shareholder of API Supply Company, Inc. (API) and the accountant of API and Atlantic Pacific. Barry is the president of Atlantic Pacific and API and is a 75% shareholder of Atlantic Pacific. Barry Benoit requested that Terrebonne Bank issue two cashier’s checks (debiting the Atlantic Pacific account) each in the sum of $9,000 with API the named payee of one check and Barry Benoit the named payee of the other check. After checking and determining that Atlantic Pacific’s account had sufficient funds to cover the two cashier’s checks, the cashier’s checks were issued.
Michael Benoit deposited the cashier’s check payable to API in the API account at Terrebonne Bank. Barry Benoit cashed his check at Terrebonne Bank immediately thereafter.
*662 Several minutes after these transactions and after the Benoits had departed, the teller at the Prospect Branch was notified of the garnishment. Terrebonne Bank notified the Benoits and their respective corporations of the situation. $9,000 was debited from API’s account. The bank requested a refund on the cashier’s check payable to Barry Benoit, which both Atlantic Pacific and Barry Benoit refused to refund. Several days later API purchased essentially all of the assets and some of the liabilities of Atlantic Pacific.
API instituted this action on the cashier’s check against Premier Bank of South Louisiana (Premier) which was formerly known as Terrebonne Bank. Premier filed a re-conventional demand against API and a third party action against Atlantic Pacific and Barry Benoit, Michael Benoit, Sandra M. Benoit individually as shareholders and directors of Atlantic Pacific alleging fraud, misrepresentation and ill practices by all defendants.
After trial on the merits judgment on the principal demand was rendered in favor of Premier and against API. Judgment on the third party action and reconventional demand was rendered in favor of defendant in reconvention and third party defendants.
API appealed alleging as error: (1) the trial court’s determination that a cashier’s check is a negotiable instrument and that API took it subject to Premier’s defense of bad faith and (2) the trial court’s failure to rule that API was entitled to judgment on the check with interest and costs. Premier answered the appeal and as plaintiff in reconvention and third party plaintiff also appeals alleging as error: (1) the trial court’s failure to find that defendant in reconvention and third party defendants were liable for the tortious conversion of funds; (2) the trial court’s failure to allow Premier as third party plaintiff to pierce the corporate veil of Atlantic Pacific to hold the Benoits personally liable for the cashier’s check issued to Barry Benoit; (3) the trial court’s failure to determine that Premier was a creditor of Atlantic Pacific and consequently the sale of assets and liabilities from Atlantic Pacific to API was covered by the Bulk Sales Act; and (4) the trial court erred in assessing one-half of costs to Premier.
CASHIER’S CHECKS
In the first assignment of error API contends that a cashier’s check is considered to be the equivalent of cash, rather than a negotiable instrument subject to the Commercial Paper Law (La.R.S. 10:3-101— 3-807). Since it is not subject to the Commercial Paper Law, the issuing bank cannot assert defenses to payment on the check when presented. API cites First Financial L.S.L.A. v. First American Bank, 489 So.2d 388 (La.App. 5th Cir.1986), writ denied, 492 So.2d 1217 (La.1986) in support of this proposition.
In First Financial L.S.L.A. v. First American Bank and Trust Co., 489 So.2d 388 (La.App. 5th Cir.), writ denied, 492 So.2d 1217 (La.1986), the Fifth Circuit held that for policy reasons a cashier’s check is the equivalent of cash or a substitute for cash and citing La.R.S. 10:4-303(l)(a), refused to allow the issuing bank to stop payment on its cashier's check for failure of consideration (which is a defense assert-able pursuant to La.R.S. 10:3-306 against a holder who does not have the status of a holder in due course). The First Financial court imposed an absolute obligation on the issuing bank, prohibiting the bank from asserting any defenses against either a holder or holder in due course (La.R.S. 10:3-301-307). The policy reason underlying the Fifth Circuit’s decision is that:
[a] cashier’s check circulates in the commercial world as the equivalent of cash ... People accept a cashier’s check as a substitute for cash because the bank stands behind it, rather than an individual. In effect the bank becomes a guarantor of the value of the check, and pledges its resources to the payment of the amount represented upon presentation. To allow the bank to stop payment on such an instrument would be inconsistent with the representation it makes in issuing the check. Such a rule would undermine the public confidence in the bank and its checks and thereby deprive the *663 cashier’s check of the essential incident which makes it useful. People would no longer be willing to accept it as a substitute for cash if they could not be sure that there would be no difficulty in converting it into cash ... Id. 268 A.2d at 329.
First Financial L.S.L.A. v. First American Bank and Trust Co., 489 So.2d at 391 (quoting National Newark & Essex Bank v. Giordano, 111 N.J.Super. 347, 268 A.2d 327, 329 (1970).
La.R.S. 10:3-104 sets out the form required for a writing to be considered a negotiable instrument under the Commercial Paper Law. It provides:
(1) Any writing to be a negotiable instrument within this Chapter must
(a) be signed by the maker or drawer; and
(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Chapter; and
(c) be payment on demand or at a definite time; and
(d) be payable to order or to bearer.
(2) A writing which complies with the requirements of this Section is
(a) a “draft” (“bill of exchange”) if it is an order;
(b) a “check” if it is a draft drawn on a bank and payable on demand;
(c) a “certificate of deposit” if it is an acknowledgment by a bank of receipt of money with an engagement to repay it;
(d) a “note” if it is a promise other than a certificate of deposit.
(3) As used in other Chapters of this Title, and as the context may require, the terms “draft”, “check”, “certificate of deposit” and “note” may refer to instruments which are not negotiable within this Chapter as well as to instruments which are so negotiable.
Comment number 4 of La.R.S. 10:3-104 states:
Any writing which meets the requirements of subsection (1) and is not excluded under Section 3-103 [i.e. money, documents of title or investment securities] is a negotiable instrument, and all sections of this Article [La.R.S. 10:3-101— 807] apply to it.... Such an instrument is a draft, a check, a certificate of deposit or a note as defined in subsection (2). Traveler’s checks in the usual form, for instance, are negotiable instruments under this Article [Chapter] when they have been completed by the identifying signature.
A cashier’s check is a check or draft issued by a drawer which is drawn on itself as drawee. The most common form of a traveler’s check is- in reality a cashier’s check with the payee’s name left in blank until countersigned. If we hold- that a cashier’s check is a negotiable instrument pursuant to La.R.S. 10:3-104, then it is subject to the provisions of La.R.S. 10:3— 101 — 807.
Under the Negotiable Instruments Law which was in effect prior to the legislature’s enactment of Title 10 of the Revised Statutes, a cashier’s check was treated as a negotiable instrument whose holder took the check subject to the defense of failure of consideration. In Nielsen v. Planters Trust & Savings Bank of Opelousas, 183 La. 645, 164 So. 613 (1935), the payee and remitter of a cashier’s check endorsed the check to cover a gambling debt. Subsequent to indorsement but before the issuing bank paid the cashier’s check to the endorsee the payee notified the bank to stop payment on the check. The drawee disregarded the notice and paid the check. Consequently, the payee instituted an action against the bank. The Supreme Court held that the payee had stated a cause of action against the bank.
In Succession of Walker, 533 So.2d 70 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1254 (La.1989) the Third Circuit held that a cashier’s check is a negotiable instrument pursuant to La.R.S. 10:3-104. Thus, its donation is governed by Title 10 of the Revised Statutes rather than by the Civil Code.
In agreement with the Third Circuit we find and so hold that a cashier’s check is a *664 negotiable instrument within the purview of La.R.S. 10:3-104 and as such it is governed by the provisions of La.R.S. 10:3-101 — 807. Included within Chapter 3 are the claims and defenses, including failure of consideration, which a party may assert against a holder or holder in due course (La.R.S. 10:3-301-307).
In written reasons for judgment the trial court found that Michael Benoit who was the owner of API and accountant of both Atlantic Pacific and API took the cashier’s check on behalf of API in bad faith. The trial court expressed doubt that the check was taken for value and found Michael Benoit’s and Barry Benoit’s testimony to be “so unbelievable that [the trial court] placed little if any weight on their testimony”. Factual findings of a trier of fact should not be set aside unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). After careful review of the record, we find no manifest error therein. Thus API was not a holder in due course and took the check subject to the claims and defenses of Premier. It is uncontested that the account had been previously garnished. Accordingly, Premier was entitled to debit the API account for the amount of the cashier’s check payable to API.
This assignment of error is without merit.
LIABILITY OF BARRY BENOIT[1]
The trial court specifically found that Barry Benoit knew that the Atlantic Pacific account had been garnished and that all of the funds in the account had been seized before he obtained the cashier’s check on behalf of Atlantic Pacific. The trial court specifically found that Barry Benoit’s testimony was not credible. On behalf of Atlantic Pacific he obtained the check naming himself as the payee. He testified that the funds were used to reimburse him for numerous loans made by him personally to Atlantic Pacific. He additionally stated that some of the funds were used to make payroll. However, no documentary evidence was introduced to support those contentions. In written reasons for judgment the trial court stated “... I don’t believe the testimony of Mr. Benoit, I think he probably used that fund partially to his own personal benefit. It just doesn’t make a lot of sense the testimony that he gave.”
The trial court did not hold Barry Benoit personally liable as the recipient of the check because the trial court relied on Civil Code article 1954 which is contained in Book III, Title IV, Chapter 4, entitled Vices of Consent. La.C.C. art. 1954 provides that “[fjraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill.” However, we have held that the cashier’s check is a negotiable instrument. According to La.R.S. 10:3-302(1) a holder in due course is a holder who takes the instrument for value and in good faith. Since Barry Benoit was not in good faith he is not a holder in due course. Not being a holder in due course he takes the instrument subject to the claims of any person and defenses of any party to the instrument. La.R.S. 10:3-305. Payment of an instrument is not final when the payment was made in favor of a holder who is not a holder in due course or a person who has not in good faith changed his position in reliance on the payment. La.R.S. 10:3-418. Consequently, the bank has a claim against Barry Benoit for the proceeds of the check issued to him.[2]
*665 COSTS
In assignment of error II Premier contends the trial court erred in assessing one-half of costs against Premier.
Generally the trial court’s assessment of costs are not disturbed absent abuse of discretion. However, we have reversed the judgment of the trial court which had been rendered in favor of third party defendants and defendants in reconvention. Accordingly, we assess all costs against plaintiff, defendants in reconvention and third party defendants.
AFFIRMED IN PART AND REVERSED IN PART.

. It is uncontested that Premier has an action against Atlantic Pacific for the cashier's check payable to Barry Benoit and that in a separate action Premier obtained a judgment against Atlantic Pacific on that account.

. Barry Benoit's conduct was tantamount to theft by means of fraudulent conduct, practices or representations pursuant to La.R.S. 14:67. Such conduct constitutes "fraud or other misconduct upon a third person through the corporation,” George A. Hormel & Co. v. Ford, 486 So.2d 927 (La.App. 1st Cir.1986), and the interests of justice could require piercing the corporate veil and imposing individual liability on Barry Benoit even if the cashier’s check was not a negotiable instrument.