980 F.2d 738
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Abdulaziz A. AL GHASHEM, Defendant-Appellant.
 No. 92-30135.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 5, 1992.*
Decided Nov. 25, 1992.
 
 Appeal from the United States District Court for the District of Oregon; No. CR-91-60108-01-RE, Robert E. Jones, District Judge, Presiding.
 D.Or.
 AFFIRMED.
 Before TANG, BRUNETTI and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Abdulaziz A. Al Ghashem appeals his conviction by conditional guilty plea for bank fraud and wire fraud, in violation of 18 U.S.C. §§ 1343 and 1344.[1] He also appeals his sentence under the Sentencing Guidelines. We affirm.
 
 
 3
 Al Ghashem was a bank teller at the Saudi American Bank in Riyadh, Saudi Arabia. On April 14, 1991, he stole three Saudi American Bank cashier's checks; filled in his name as payee in the amounts of $400,000, $400,000, and $200,000; and then forged the signature of the authorized Saudi American Bank official.
 
 
 4
 The next day, Al Ghashem flew to New York where he met with Citibank Assistant Vice-President Steven Klemme and deposited the checks. Klemme authorized a $25,000 overdraft advance, and also approved Al Ghashem's VISA application with a credit limit of $10,000. On April 19, 1991, Al Ghashem flew to Oregon, carrying the cash and traveler's checks he received from Citibank. A few days later, he opened two checking accounts at First Interstate Bank of Oregon, with the funds obtained from Citibank. He then requested that the First Interstate officer obtain $500,000 from his Citibank account by a wire transfer. However, the Saudi American Bank had already discovered the theft of the cashier's checks and notified Citibank. Citibank froze his accounts and cancelled his VISA card.
 
 
 5
 Prior to entering his conditional guilty plea to the three count indictment for wire fraud, bank fraud, and interstate transportation of stolen property, Al Ghashem moved unsuccessfully to dismiss the first two counts. At sentencing, the court found that he intended to cause a $1,000,000 loss to Citibank. This translated to an offense level of 17 under the Sentencing Guidelines and a sentence of 24 months. This appeal followed.
 
 A. The Wire and Bank Fraud Convictions
 
 6
 To be convicted of wire fraud, Al Ghashem must have devised or intended to devise a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," and transmitted or caused "to be transmitted by means of wire ... in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice...." 18 U.S.C. § 1343.
 
 
 7
 Bank fraud is defined as the execution or attempt to execute "a scheme or artifice--(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, ... or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises...." 18 U.S.C. § 1344.
 
 
 8
 While Al Ghashem concedes that he may have committed a crime in Saudi Arabia by stealing and forging the Saudi American Bank cashier's checks, he argues that he did not commit wire or bank fraud in the United States. He asserts that the Saudi American Bank was legally obligated to honor the fraudulently obtained cashier's checks. Therefore, he claims, his actions and representations could not have deprived the United States banks of the $1,000,000.
 
 
 9
 Al Ghashem's argument misconceives both the requirements of the wire and bank fraud statutes, and the nature of cashier's checks. A conviction for bank fraud requires proof beyond a reasonable doubt that "the defendant knowingly (1) engaged in a scheme to defraud a federally chartered or insured financial institution, or (2) participated in a scheme to obtain money under custody or control of a federally chartered or insured financial institution by means of material, false statements or representations." United States v. Cloud, 872 F.2d 846, 850 (9th Cir.), cert. denied, 493 U.S. 1002, 110 S.Ct. 561, 107 L.Ed.2d 556 (1989). The bank fraud statute "directly tracks" the wire fraud statute with regard to its intent requirement. United States v. Mason, 902 F.2d 1434, 1441 (9th Cir.1990).
 
 
 10
 Al Ghashem contends that to be guilty of either bank or wire fraud he must also cause a financial loss to the bank, either in terms of property or services. We rejected the same argument in Mason, 902 F.2d at 1441-43, and held that proof of "quantifiable dollar loss" to the bank was unnecessary. Instead, the issue was whether there was sufficient evidence for the jury to find that "Mason's role in the scheme influenced Wells Fargo Bank into continuing to provide Compton immediate credit on his merchant account." Id. at 1443 (citing United States v. Swearingen, 858 F.2d 1555, 1558 (11th Cir.1988), cert. denied, 489 U.S. 1083, 109 S.Ct. 1540, 103 L.Ed.2d 844 (1989)).
 
 
 11
 Here, Al Ghashem's misrepresentations were instrumental in influencing Citibank's decision to advance him credit, and had his scheme succeeded, Citibank would have wired the stolen funds to the First Interstate account for his use. The result is the same under the wire fraud statute. See United States v. Louderman, 576 F.2d 1383, 1387 (9th Cir.) (in wire fraud prosecution it is unnecessary to prove success), cert. denied, 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978).
 
 
 12
 But, Al Ghashem claims, no loss could have resulted to Citibank because Saudi American Bank was obligated to honor the cashier's checks. He asserts that a cashier's check is the equivalent of cash, and thus cannot be dishonored by the issuing bank. However, he cites no authority for the rather amazing proposition that a bank must honor a forged cashier's check. While appellant relies heavily on National Newark & Essex Bank v. Giordano, 268 A.2d 327, 329 (N.J.Super.Ct.Law Div.1970), that case is fundamentally inapposite--it did not involve a forged cashier's check. Rather, in defining what a cashier's check is, the court stated that, "[i]t is [a check] issued by an authorized officer of a bank...." Id. at 328. That does not include a forgery.
 
 
 13
 More in point is Northern Trust Co. v. Chase Manhattan Bank, 582 F.Supp. 1380 (S.D.N.Y.), aff'd, 748 F.2d 803 (2d Cir.1984), in which a New York district court addressed the forgery issue, and held that Northern could not recover from Chase for payment on a forged check. In doing so, it explained that "[h]ad Northern, the drawee-drawer, refused to pay the forged check as it should have done, Chase would have had to bear the loss, not because it had violated a duty to Northern ... but because it could have had no claim against Northern on a forged Northern signature to the check." 582 F.Supp. at 1383 (emphasis added). The court made it clear that "Northern, when the forged check was presented to it for payment, could and should have returned the check unpaid by reason of the forgery...." Id. at 1384.
 
 
 14
 Saudi American Bank stood in the same position as Northern; however, the former bank detected the forgery and contacted Citibank before it paid the checks. Citibank immediately froze Al Ghashem's accounts and refused to wire any funds to First Interstate. Contrary to Al Ghashem's assertion, these events show only that the United States banks avoided a potentially greater loss. They do not show that forged cashier's checks must be paid. Indeed, Citibank apparently did in fact lose funds it advanced to him. At the time of the presentence report, it was out of pocket over $17,000.
 
 
 15
 Had Al Ghashem succeeded, Citibank could have lost a great deal more. Accordingly, the district court did not err in denying Al Ghashem's motion to dismiss the bank and wire fraud counts.
 
 B. The Sentence
 
 16
 Section 2F1.1 of the Sentencing Guidelines applied to Al Ghashem's conviction. The court found that Al Ghashem intended to cause a loss of $1,000,000 to Citibank, and accordingly increased his offense level by eleven points. U.S.S.G. § 2F1.1(b)(1)(L). It is clear that section 2F1.1 requires a calculation of the "intended loss." U.S.S.G. § 2F1.1, comment. (n. 7) ("[I]f an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss."); United States v. Koenig, 952 F.2d 267, 271-72 (9th Cir.1991) (The section does not require a finding that the intentions were realistic.); United States v. Wills, 881 F.2d 823, 827 (9th Cir.1989).
 
 
 17
 Al Ghashem argues that he could not have intended to cause a $1,000,000 loss to a United States bank because the Saudi American Bank was obligated to honor the cashier's checks. As explained in the previous section, this argument is meritless. If Al Ghashem's plan had unfolded as he planned, Citibank might well have had to bear the loss. The court did not err in making its finding of intended loss.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Al Ghashem does not appeal his conviction for transportation of stolen securities and money under 18 U.S.C. § 2314