244 So.2d 509 (1970)
SANI-SERV DIVISION OF BURGER CHEF SYSTEMS, INC., a Corporation, Appellant,
v.
SOUTHERN BANK OF WEST PALM BEACH, Florida, a Corporation, Appellee.
No. 69-365.
District Court of Appeal of Florida, Fourth District.
December 18, 1970.
*510 Jack Ackerman, of Johnson, Brant, Ackerman & Bakst, West Palm Beach, for appellant.
John A. Gentry, III, of Moyle, Gentry & Jones, West Palm Beach, for appellee.
REED, Judge.
The issue here is whether the defendant-appellee, Southern Bank of West Palm Beach, successfully proved a defense to a cashier's check issued on its own account.
The plaintiff, Sani-Serv Division of Burger Chef Systems, Inc., (hereafter, "Sani-Serv") filed a complaint on 20 February 1968 in the Circuit Court for Palm Beach County, Florida. The complaint alleged that the defendant on 9 January 1967 executed a promissory note to the plaintiff a copy of which was attached to the complaint. The complaint further alleged that the defendant failed to pay the note when presented and concluded with a demand for judgment in the amount of the note, to-wit, $5,161.66, plus interest from the date thereof. An examination of the attachment to the complaint shows that the so-called note is really not a note, but in fact a cashier's check.
The defendant's answer denied the execution of the instrument sued on and alleged affirmative defenses. The cause was tried without a jury on 24 March 1969. The trial judge made detailed findings of fact and concluded that the plaintiff was not a holder in due course and, for that reason decided that the defendant was entitled to have dishonored the check. Judgment was entered for the plaintiff for $2,268.00 together with interest from 9 January 1967, at six percent interest.
It is from this judgment that the appellant, Sani-Serv, appeals.
The plaintiff, Sani-Serv, is a manufacturer of machines for the food industry. It sold two items of equipment to G & D Equipment Corporation for the aggregate price of $2,999.00. By the end of December 1966 the purchase price of these items was unpaid. At that time, G & D wanted to buy three more items from the plaintiff for the aggregate price of $2,268.00. The plaintiff was willing to sell the additional items only if the total amount which would be due to the plaintiff, $5,267.00, was paid by a cashier's check from G & D's bank which of course turned out to be the defendant.
To effectuate the transaction, the plaintiff shipped by common carrier the three additional items purchased by G & D. These items were shipped to Lake Worth, Florida, the location of G & D's place of business. The items were covered by a uniform order bill of lading showing them to be consigned to the plaintiff's order. The bill of lading provided in part:
"The surrender of this original order bill of lading properly endorsed shall be required before the delivery of the property * * *."
The original bill of lading and a sight draft were sent by the plaintiff to the defendant bank. Neither showed the purchase price of the goods covered by the bill of lading. The bill of lading simply described the goods as three items, giving the serial number of each. The sight draft was for $5,267.00. This sum represented the purchase price of the three new machines, $2,268.00, plus the $2,999.00 owed for the machines previously sold to G & D. These two instruments were accompanied, however, by a credit memorandum issued by the plaintiff which provided that if the sight draft were paid on first presentation, a two percent discount could be taken against $2,268.00.
*511 When these instruments arrived, the bank notified G & D Equipment Corporation, which, in the person of Mr. Garber, executed to the defendant bank a bill of sale covering the three items listed on the bill of lading and a trust receipt which provided that G & D would hold the items described in the bill of sale and trust receipt for the defendant with the privilege to sell the same, the proceeds to be applied on G & D's note to the defendant. Remarkably, the note attached to the trust receipt was completely in blank except for the signature of Mr. Garber.
After the bill of sale and trust receipt were executed, the defendant gave the bill of lading to G & D and issued its cashier's check in the amount of $5,161.66 payable to the plaintiff. The amount of the cashier's check was calculated by taking the amount of the sight draft ($5,267.00) and deducting two percent therefrom ($105.34)  despite the instruction on the plaintiff's credit memo that the two percent discount was to be taken against $2,268.00.
Not until several weeks after the cashier's check had been issued did the defendant discover that the purchase price of the machines covered by the bill of lading and the trust receipt was approximately $3,000.00 less than the amount of the sight draft and the cashier's check. At this point the defendant decided to stop payment on the cashier's check.
Two or three months before the transaction here involved, the defendant bank had executed an instrument with G & D Equipment Corporation entitled "Loan Agreement for Trust Receipt Transactions." This instrument provided that the defendant would extend to G & D Equipment Corporation, on the security of trust receipts, a line of credit to be used by G & D exclusively in the operation of its business. The instrument also provided that the credit would be solely and exclusively at the discretion of the bank and the same could be cancelled or withdrawn at any time. There was no evidence that the plaintiff knew of this so-called agreement. It was admitted by Mr. Lucius, the president of the bank, and Mr. Jones, defendant's vice-president and cashier, that to their knowledge the bank gave no notice to the plaintiff of the floor planning arrangement with G & D, although this is perhaps immaterial.
The trial court held that the plaintiff was not a holder in due course and, therefore, the bank was justified in dishonoring the check. Assuming the trial court's premise to be correct, that is, that the plaintiff was not a holder in due course, the trial court's conclusion would correctly follow only if the defendant bank had proved a defense to the check. This transaction is controlled by the Uniform Commercial Code. Section 673.3-307 (2), F.S. 1967, F.S.A., provides:
"Where signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense." (Emphasis added.)
At the close of the plaintiff's case it had established the authenticity of the check and introduced it in evidence. The essential inquiry, therefore, is whether or not the defendant proved a defense to the check.
The trial judge did not totally disallow the plaintiff's claim. He awarded a judgment in favor of the plaintiff for $2,268.00, whereas the amount of the check sued on was $5,161.66. It would appear, therefore, that the trial judge concluded that a partial failure of consideration for the check was proved.
The defendant's answer alleged four defenses: (1) fraud, (2) estoppel, (3) mutual mistake, and (4) inadequacy of consideration.
The first defense was predicated on an allegation that the plaintiff falsely represented that the sight draft correctly stated the purchase price of the three machines shown on the accompanying bill of lading. We have scanned the record and *512 find no support for this allegation. On the contrary, the plaintiff's credit memo which defendant admitted having received with the sight draft and bill of lading indicated that a discount was to be taken not against the entire amount of the sight draft, but against only $2,268.00 thereof. This discrepancy alone might be considered as sufficient to put the defendant on notice that the machines covered by the bill of lading were only worth that amount.
The second defense, estoppel, was predicated on an allegation that the plaintiff knew or should have known that the defendant would rely on the sight draft as correctly representing the purchase price of the three machines shown on the bill of lading and defendant did so rely on the sight draft. It is our opinion that the record does not show that the plaintiff had any such knowledge or that the defendant did in fact rely on the sight draft as a correct representation of the purchase price of said machines. The defendant's own president testified that in dealing with sight drafts, it was customary for the bank to have an invoice (which would show the purchase price). The bank's cashier, when asked why he did not insist on an invoice before issuing the bill of lading, said it was simply forgotten, and the bank was in error for so doing. The fair import of this testimony dispells the notion that the bank in fact relied on the sight draft as representing the purchase price of the goods sold to G & D, its own customer, or that plaintiff knew the bank would rely on the sight draft for such information. Furthermore, the testimony indicates that there were adequate means available to the defendant by which it could have ascertained the purchase price of the machines had it thought to do so. Hence the evidence falls far short of establishing a foundation for estoppel in pais. See 12 Fla.Jur., Estoppel and Waiver, §§ 30, 57.
Insofar as the third defense is concerned, it appears that the mistake, if one was made, was unilateral and not mutual. This defense was, therefore, not proved, and the factors necessary for equitable relief based on unilateral mistake was neither pled nor proved. See Maryland Casualty Company v. Krasnek, Fla. 1965, 174 So.2d 541.
With respect to the alleged inadequacy of consideration, a cashier's check is a promise to pay and must be supported by a legal consideration. 10 Am.Jur.2d, Banks § 643; Riverside Bank v. Maxa, Fla. 1950, 45 So.2d 678. Consideration, however, can rest in a detriment to the promissee  in this case the plaintiff  as well as a benefit to the promissor  in this case the defendant. Falk v. Salario, 1933, 108 Fla. 135, 146 So. 193; Rapp v. Demmerle, Fla. 1952, 61 So.2d 481; and Maryland Casualty Company v. Krasnek, supra.
It is apparent from the record that the benefit which the defendant received from the transaction was something less than ideal. The net result of the transaction was that the defendant financed roughly $5,000.00 worth of purchases for its customer, G & D Equipment Corporation, but received as security therefor an encumbrance on machinery valued at approximately $2,000.00, leaving the defendant an unsecured creditor for the balance. This, however, does not equate with a failure of consideration. When the defendant took delivery of the trust receipt from G & D Equipment Corporation, it placed in G & D's hands a bill of lading enabling the latter to acquire and dispose of the machinery which the plaintiff would not have delivered to G & D, but for the payment in full of its sight draft. There was, therefore, in this transaction a detriment to the plaintiff that was legally sufficient consideration for the cashier's check. Once a legal consideration appears, its adequacy is not a subject for judicial inquiry except under unusual circumstances not here present. Yedlin v. Lewis, 5 Cir.1963, 320 F.2d 35; Johnson Lumber & Supply Co. v. Byron, Fla.App. 1959, 113 So.2d 577.
The trial court, in holding for the defendant, evidently placed some reliance on *513 the case of Tropicana Pools, Inc. v. First National Bank of Titusville, Fla.App. 1968, 206 So.2d 48. The Tropicana case is distinguishable from the present case in that in Tropicana all parties conceded there was no consideration for the cashier's check. At page 49 of the opinion in Tropicana the following appears:
"* * * Both parties have presented and argued substantially the same issue of law on this appeal: May a bank, on the ground of a lack of consideration, dishonor a cashier's check it has issued, when presented for payment by the original payee?" (Emphasis added.)
On the basis of the foregoing analysis, we conclude that the defendant failed to establish a defense to the payment of the cashier's check; therefore, the trial court erred in rendering a judgment for the plaintiff for less than the full amount of the check. On remand, the trial court shall enter a judgment for the plaintiff for the face amount of the check $5,161.66, together with interest thereon from the date of 9 January 1967.
There is an alternate theory which in our opinion is applicable to this case although the appellant did not argue it. As we have pointed out, the present case is controlled by the Uniform Commercial Code. It is well established in Florida that a cashier's check cannot be countermanded in the hands of a holder in due course. Tropicana Pools, Inc. v. First National Bank of Titusville and Riverside Bank v. Maxa, supra. Under the Uniform Commercial Code a payee of a check can be a holder in due course. Section 673.3-302(2), F.S. 1967, F.S.A. A holder in due course is a holder who takes the instrument: (a) for value; and (b) in good faith; and without notice of any defense against it. Section 673.3-302(1), F.S. 1967, F.S.A. As our discussion above has indicated, it appears that the plaintiff took the cashier's check for value in good faith and without notice of any defense. The defendant, therefore, had no right to countermand the cashier's check.
For the foregoing reasons, the judgment is vacated and the cause remanded for the entry of a judgment for the plaintiff consistent with this opinion.
Remanded with instructions.
WALDEN, J., and COOPER, RICHARD H., Associate Judge, concur.