532 So.2d 676 (1988)
BARNETT BANK OF JACKSONVILLE, N.A., a National Banking Association, Appellant,
v.
WARREN FINANCE, INC., a Florida Corporation, Appellee.
No. BS-398.
District Court of Appeal of Florida, First District.
April 7, 1988.
On Motion for Rehearing October 28, 1988.
*678 George L. Hudspeth, Robert J. Winicki and David E. Otero of Mahoney, Adams, Milam, Surface & Grimsley, P.A., and James A. Bledsoe, Jr. of Bledsoe & Schmidt, P.A., Jacksonville, for appellant.
Steven A. Werber and Linda Y. Kelso of Commander, Legler, Werber, Dawes, Sadler & Howell, Jacksonville, for appellee.
BARFIELD, Judge.
Barnett Bank appeals a final summary judgment in favor of Warren Finance in Warren's action for Barnett's wrongful dishonor of cashier's checks presented for payment by Warren. Finding factual issues to be resolved by the trier of fact, we reverse for further proceedings.
Warren Finance entered a financing arrangement with Redan Engineering whereby Warren would advance funds to Redan. When Redan was paid for work Redan performed, Redan would deliver those checks to Warren in return for funds advanced. On one occasion, Warren demanded cashier's checks in payment from Redan. Redan obtained three cashier's checks, totalling $221,443, from Barnett Bank to replace three checks drawn on accounts at Barnett and delivered to Redan for work performed. Redan was named as payee on the cashier's checks; the original payors were named as purchasers of the cashier's checks. After Redan endorsed the checks to Warren, Warren refused to advance any more funds to Redan. With the assistance of one of the payors of the original checks, Redan had Barnett stop payment on the cashier's checks. Barnett refused to honor the cashier's checks when presented for payment by Warren.
Warren then brought this action against Barnett, contending Barnett wrongfully dishonored the three cashier's checks. Barnett defended on the basis that Warren was not a holder in due course and asserted various defenses related to the transaction between Warren and Redan. Barnett filed a third party complaint against Redan.[1]
In deposition, Janet and John Odom, principals in Redan, stated that Warren had agreed to advance additional funds to Redan in return for the cashier's checks. They maintained that they would not have given the checks to Warren if Warren had not promised to advance additional funds. The funds were needed to cover outstanding checks issued by Redan. Ellis Warren deposed that the Odoms did not request an advance of additional funds until after the cashier's checks had been delivered to Warren. Upon Warren's motion, the trial court entered summary judgment for Warren against Barnett for the amount of the dishonored cashier's checks.
The general rule is that a cashier's check is drawn by a bank on its own accounts and is accepted by the issuing bank in advance by the very act of issuance. Crosby v. Lewis, 523 So.2d 1154 (Fla. 5th DCA 1988); State of Pennsylvania v. Curtiss National Bank of Miami Springs, Florida, 427 F.2d 395 (5th Cir.1970) (applying Florida law); Annot., 97 A.L.R.3d 714 (1980). A number of jurisdictions take the position that once a cashier's check is issued, a bank may not subsequently refuse to honor it when presented for payment, on either its own initiative or upon request of any party to the check.[2] These courts view *679 a cashier's check as the equivalent of cash. For policy reasons to preserve confidence in such checks as the next best thing to cash, a bank should not be permitted to refuse to honor its cashier's check when presented for payment. See National Newark and Essex Bank v. Giordano, 111 N.J. Super. 347, 268 A.2d 327 (1970).[3]
Other jurisdictions hold that a bank may refuse to honor a cashier's check, based on either the bank's defenses or defenses the purchaser, payee or an endorsee may assert against the holder presenting a check for payment.[4] These jurisdictions view a cashier's check as a promissory note issued by the bank[5] or as a draft of the bank accepted in advance but against which the bank may raise defenses to avoid payment.[6]See Da Silva, 600 F. Supp. at 1008; Lawrence, Making Cashier's Checks and Other Bank Checks Cost Effective: A Plea For Revision of Articles 3 and 4 of the Uniform Commercial Code, 64 Minn.L. Rev. 275, 285-320 (1980) for a discussion of these various approaches to cashier's checks.
Courts construing Florida law take the position that a cashier's check in the hands of a holder in due course[7] cannot be countermanded or otherwise subject to stop payment. Sani-Serv Division of Burger Chef Systems, Inc. v. Southern Bank of West Palm Beach, 244 So.2d 509 (Fla. 4th DCA 1970); Tropicana Pools, Inc. v. First National Bank of Titusville, 206 So.2d 48 (Fla. 4th DCA 1968) (a pre-UCC case decided under the Uniform Negotiable Instruments Law). Where the holder is not a holder in due course, i.e., did not take for value or knew of a possible defense to payment, a bank may defend against payment where the bank itself stands to be victimized by payment of the cashier's check. Thus, a bank has been held entitled to assert defenses of lack or failure of consideration in the issuance of the cashier's checks, section 673.408, or such other defenses as it might assert under section 673.306. Curtiss National Bank, 427 F.2d at 395; Sani-Serv, 244 So.2d at 509 (if the holder was not a holder in due course, the bank could raise defenses of lack or failure of consideration, fraud, estoppel, or mutual mistake in the issuance of the cashier's check). However, as pointed out in Crosby v. Lewis, 523 So.2d at 1156, there is no clear authority in Florida for a bank's assertion *680 of defenses or claims of another party to a transaction involving a cashier's check, such as those of a purchaser, a payee or an endorsee of a cashier's check.
It is our view that in a cashier's check an issuing bank makes a promise to the named payee that it will honor the check without reservation when presented by a payee who is a holder in due course. Where the payee participates in a fraud upon the bank in the check's issuance, then the payee would not be a holder in due course and the issuing bank could raise the defense of failure of consideration or other potential defenses available under sections 673.305-.306, Florida Statutes. Curtiss National Bank, 427 F.2d at 395; SaniServ, 244 So.2d at 509. However, any claim or defense of the check's purchaser can not be asserted to stop payment of a check presented by the named payee. In the hands of the payee, a cashier's check would be the next best thing to cash as the bank could only defend on the basis of a fraud upon the bank itself. Any issues related to the underlying transaction between the purchaser and payee could not be raised in defense of dishonor.
However, as in the instant case, where a cashier's check is endorsed by the payee, e.g. Redan Engineering, to a third person, e.g. Warren Finance, in satisfaction of an obligation separate and apart from the check's issuance or the initial transaction for which the check was obtained, then a cashier's check loses its cash-like aspects and becomes more like a negotiable instrument to which claims and defenses of other parties, such as Redan, will attach. In that situation, a bank may, at its discretion, refuse to honor the check when presented by an endorsee based on the claim or defense of the payee or of an intervening endorsee of the check.
In Leo Syntax Auto Sales, Inc. v. Peoples Bank & Savings Co., 6 Ohio Misc. 226, 35 Ohio Op.2d 330, 215 N.E.2d 68 (Tuscarawas Co. C.P. 1965), the payee of a cashier's check (who was also the purchaser) endorsed the check in payment for a car. The car was then discovered not to be in the condition represented and the payee had the bank refuse to honor the check when presented. The Ohio court held the bank could, if it so chose, refuse payment on the check when presented by one not a holder in due course or by one who obtained the endorsement by fraud.[8]
We disagree with the decision in Leo Syntax to the extent it appears to suggest a purchaser who was not a payee could seek dishonor of a cashier's check. However, we agree with its conclusion that a bank could upon the payee's request refuse to pay a cashier's check in the hands of a party who obtained the check by endorsement. For once a cashier's check begins to circulate through endorsement to parties other than the payee, the check becomes entangled in other transactions, the parties to which must naturally place less reliance on a cashier's check as the equivalent to cash. Claims and defenses to payment to the check will arise as an endorsed cashier's check is used to satisfy obligations unrelated to the original transaction for which the cashier's check was obtained. This result would insure the continuing treatment of a cashier's check as the equivalent of cash in the hands of a payee with the status of a holder in due course. Any other holder would take the check subject to certain defenses, of the bank, where the payee is not a holder in due course, and of a payee, where the endorsee is not a holder in due course. The defenses and claims of the original purchaser would never be available to deny payment.
Under section 673.306(4)[9], Barnett may, by naming Redan as a third party, assert certain claims Redan could assert against Warren, such as lack of consideration or fraud in the underlying transaction. Further, by issuing replacement cashier's checks to Redan, Barnett became subrogated to those claims which Redan *681 had against Warren Finance and may therefore raise them as if Redan were in the litigation.[10]
Therefore, issues of fact remain as to whether Warren as the endorsee of the three cashier's checks is a holder in due course and is entitled to have the checks honored. That issue cannot be resolved on the basis of the current record of this case. The summary judgment in favor of Warren Finance is therefore REVERSED and the case REMANDED for further proceedings consistent with this opinion.
ERVIN and JOANOS, JJ., concur.

ON MOTION FOR REHEARING
JOANOS, Judge.
Motion for rehearing is denied. We certify, however, the following question as one of great public importance:
MAY THE ISSUING BANK ASSERT THE DEFENSES OF A PAYEE OR ENDORSEE AGAINST THE RIGHT OF A SUBSEQUENT ENDORSEE TO RECEIVE PAYMENT ON A CASHIER'S CHECK?
BARFIELD, J., concurs by separate opinion.
ERVIN, J., concurs and dissents with opinion.
BARFIELD, Judge, concurring:
I concur in denial of the motion for rehearing and certification of the issue. The bank did not "stop payment" on the checks as suggested by appellee. In fact, the bank recognized its obligation to pay the checks and did so. It paid the payee, not the endorsee. The question is whether it properly did so by recognizing the competing claim of the payee over that of the endorsee. The parties continuously referred to the bank's action as one of "stop payment." Technically, it was not, and that term must be understood in the context of this case to represent the bank's action in choosing to pay one claimant rather than another and refusing to recognize an endorsement as valid.
Failure to allow the assertion of such defenses would entitle any holder of a cashier's check to the proceeds of that check, and would truly make a cashier's check the same as cash. I suggest that such a construction is not only commercially unsound but runs afoul of Article I, sections 8 and 10 of the United States Constitution.
ERVIN, Judge, concurring and dissenting.
Warren Finance has asked this court to reconsider its opinion, because, it argues, to do otherwise would wreak havoc within the banking system which has hitherto closed countless transactions by using cashier's checks as a substitute for cash. Although I think the motion overstates the effect of our decision, I now believe that there is a substantial question regarding whether the majority's opinion is correct in allowing the bank to take the defenses of the third party payee/purchaser against the holder of a cashier's check in order for the bank to either stop payment of the check or, as was in fact done here, make payment to the payee, rather than to the holder/endorsee. I would therefore grant the motion for rehearing and affirm the judgment below.
*682 In my opinion the question of whether Warren Finance has the status of a holder in due course is immaterial to a determination of its right to receive payment on the cashier's check delivered to it, because, once a cashier's check is issued, such check is generally deemed to constitute an acceptance by the issuing bank; therefore after its issuance and deliverance to the payee, the transaction is deemed complete insofar as the payee is concerned; accordingly, under such circumstances, it is beyond the power of the bank to issue payment to anyone other than the holder. See Kaufman v. Chase Manhatten Bank, 370 F. Supp. 276, 278 (S.D.N.Y. 1973). Accord First Financial L.S.L.A. v. First American Bank and Trust Company, 489 So.2d 388 (La. Ct. App.), writ denied, 492 So.2d 1217 (La. 1986). The rule precluding a bank from stopping payment or making payment to one other than a holder of a cashier's check under such circumstances has been restated in the following terms: "A cashier's check is defined as a bill of exchange drawn by a bank upon itself and accepted in advance by the act of its issuance and not subject to countermand by either its purchaser or the issuing bank." Wertz v. Richardson Heights Bank and Trust, 495 S.W.2d 572, 574 (Tex. 1973). Cf. Fur Funtastic Limited v. Kearns, 120 Misc.2d 794, 467 N.Y.S.2d 499, 500 (Sup.Ct. 1983), stating that "the preferable rule is that a bank not be permitted to raise contract defenses available to its customer. This approach preserves the function of bank checks as cash equivalent items, insomuch as banks will presumably be disinclined to stop payment if they are precluded from raising the customer's defenses or warranty claims in subsequent litigation with the holder."[1] I am of the view that appellee's motion for rehearing is of merit; I would therefore grant it and affirm the judgment entered.
I agree with the position of Professor Lawrence stated in Lawrence, Making Cashier's Checks and Other Bank Checks Cost-Effective: A Plea for Revision of Articles Three and Four of the Uniform Commercial Code, 64 Minn.L.Rev. 275 (1980), advocating the policy of treating cashier's checks as a cash-like substitute, as opposed to a negotiable instrument, arguing that subjecting holders to the purchasers' or banks' defenses
deprives cashier's checks of their independent function in commercial transactions: serving as a cash substitute. The possibility that holders in due course may be required to commence law suits simply to establish their right to payment will discourage them from accepting cashier's checks. This disincentive is even stronger when the holder has not dealt with the purchaser and would otherwise be subject to any suit based on the underlying transaction asserted by the purchaser.
Id. at 317. Lawrence proposes that the Uniform Commercial Code be amended in a manner to ensure that cashier's checks will serve as substitutes for cash,[2] in order "to provide that a holder of a cashier's check takes the instrument free from all defenses of the bank, and from all claims  both legal and equitable  and defenses of all other parties except for the defenses of alteration and forged indorsement." Id. at 318.
The cases permitting banks to raise defenses to the payment of cashier's checks usually involve situations where the payees of such checks have dealt directly with the bank and have engaged in some type of fraud in order to obtain issuance of the check from the payor bank. See TPO, Inc. v. Federal Deposit Insurance Corporation, 487 F.2d 131 (3d Cir.1973). Accord Anderson, Clayton and Company v. Farmers National Bank, 624 F.2d 105 (10th Cir.1980). Similarly, it has been held that an issuing bank has the right to refuse to honor a cashier's check because of a failure of consideration when the check is held by a party to the instrument with whom it has dealt. See Pulaski Chase *683 Co-Opertive v. Kellogg-Citizens National Bank, 130 Wis.2d 200, 386 N.W.2d 510 (App. 1986); Travi Construction Corporation v. First Bristol County National Bank, 10 Mass. App. 32, 405 N.E.2d 666 (1980). Other courts have on the other hand stated that failure of consideration is not a defense that a bank can use to dishonor a cashier's check. See State of Pennsylvania v. Curtiss National Bank, 427 F.2d 395 (5th Cir.1970); Munson v. American National Bank and Trust Company, 484 F.2d 620 (7th Cir.1973).
The majority's opinion in the case at bar allows the bank to raise the defenses of a third party (the payee/purchaser) against a holder endorsee who received the check through endorsement if it can establish that the endorsee is not a holder in due course. The only authority for this position is an Ohio case, Leo Syntax Auto Sales, Inc. v. Peoples Bank and Savings Company, 6 Ohio Misc. 226, 215 N.E.2d 68 (Court of Common Pleas 1965). Leo Syntax Auto Sales apparently allowed the bank to take the defenses of the purchaser of the cashier's check solely because the purchaser was also the payee. In so holding the court makes the somewhat questionable statement: "It is well settled that the purchaser of a cashier's check payable to one other than the purchaser thereof has no right to countermand payment of the instrument after its issue, except for fraud, failure of consideration or where payment is stopped by injunctive order." (e.s.) In reaching its decision, the court cites the rule distinguishing a purchaser/payee from any other purchaser, but gives no authority that directly supports this proposition. Its reference to Cross v. Exchange Bank Company, 110 Ohio App. 219, 168 N.E.2d 910 (1958), as supporting the view that "a purchaser of a cashier's check payable to himself has a right to countermand payment of the instrument after its issue", is not apparent from a reading of the Cross decision, holding only that a purchaser of a bank money order or cashier's check, payable to one other than the purchaser, has no right to countermand payment of the instrument after its issue.
My review of applicable case law authority has revealed no other case allowing a bank to take the defenses of a third party under the circumstances here involved: the alleged fraud of the endorsee of the instrument. All of the cases allowing dishonor, as previously indicated, involve defenses such as failure of consideration or attempted fraud by the payee having privity with the bank. In the instant case no contractual relationship existed between the bank and the endorsee.
I question moreover whether, given the lack of precedent in Florida, the result reached by the majority is the optimal public policy result. In my judgment, the better public policy approach would be to advocate use of a cashier's check as a substitute for cash and allow dishonor of cashier's checks in only extremely limited circumstances. If this approach were followed, the bank would not be allowed to raise the fraud defense of a third party.
Our opinion joins only one other court in the nation which permits the bank, under the circumstances at bar, to maintain against a holder endorsee the defense of fraud of its customer-purchaser. I therefore dissent to the majority's opinion and would follow the substantial case law authority adopting the contrary view, grant the motion for rehearing and enter judgment for appellee.
I concur, however, with the opinion on rehearing in certifying the question as one of great public importance.
NOTES
[1] After Barnett stopped payment on the original cashier's checks, the bank issued replacement cashier's checks in the same amount to Redan, which is now bankrupt.
[2] Munson v. American National Bank & Trust Co., 484 F.2d 620 (7th Cir.1973); Da Silva v. Sanders, 600 F. Supp. 1008 (D.D.C. 1984) (bank could not refuse to honor cashier's check presented by innocent payee although there was fraud and failure of consideration in the purchase of the check); First Financial L.S.L.A. v. First American Bank and Trust Co., 489 So.2d 388 (La. Ct. App.), writ denied, 492 So.2d 1217 (La. 1986) (bank could not raise defense of failure of consideration in refusing to pay cashier's check); Moon Over The Mountain, Ltd. v. Marine Midland Bank, 87 Misc.2d 918, 386 N.Y.S.2d 974 (N.Y. Civ. Ct. 1976) (payee could not stop payment of cashier's check when presented by endorsee).
[3] Under UCC 3-410, (codified at section 673.410, Florida Statutes), these courts conclude that the signature of a bank official on the cashier's check constitutes the bank's "signed engagement to honor the draft as presented." Since the cashier's check is "accepted" upon issuance, a bank or a customer of the bank may not stop payment under UCC 4-303 (section 674.303) as a stop order comes too late to terminate the duty to pay the check if the stop order is received after the bank has accepted the check. The bank therefore may not raise the defenses in UCC 3-305 or 3-306 as that would constitute a stop order which is barred by UCC 4-303.
[4] TPO Inc. v. Federal Deposit Insurance Corp., 487 F.2d 131 (3rd Cir.1973); Banco Ganadero y Agricola, S.A. v. Society National Bank of Cleveland, 418 F. Supp. 520 (N.D.Ohio 1976); Rezapolvi v. First National Bank of Maryland, 296 Md. 1, 459 A.2d 183 (1983); Santos v. First National State Bank, 186 N.J. Super. 52, 451 A.2d 401 (App.Div. 1982); Leo Syntax Auto Sales v. Peoples Bank & Savings Co., 6 Ohio Misc. 226, 35 Ohio Op.2d 330, 215 N.E.2d 68 (1965).
[5] UCC 3-118(1), (section 673.118(1)), provides that a "draft drawn on the drawer is effective as a note." As the bank is both the drawer and drawee on a cashier's check, the bank becomes the note's maker. The bank as the maker of a note is then entitled to assert the defenses available under UCC 3-305 and 3-306. See TPO Inc. v. Federal Deposit Insurance Corp., 487 F.2d 131 (3rd Cir.1973).
[6] Under UCC 3-413, the contract of one who accepts a check is identical to that of a maker. As makers are subject to 3-305 and 3-306, then the bank issuing a cashier's check, which amounts to acceptance in advance, may also avail itself of the defenses present in those sections of the UCC.
[7] One who takes the check for value, in good faith and without notice of any defense or claim to it by any person. § 673.302, Florida Statutes.
[8] The Ohio court also held that in the subsequent litigation, the payee was not a necessary party but the bank was entitled to the benefit of the payee's defenses against the endorsee.
[9] "The claim of any third person to the instrument is not otherwise available as a defense to any party liable thereon unless the third party himself defends the action for such party."
[10] Under UCC § 4-407 (section 674.407, Florida Statutes), a payor bank which pays an item over a stop-payment order of the drawer or maker or "under circumstances giving a basis for objection by the drawer or maker, to prevent unjust enrichment and only to the extent necessary to prevent loss to the bank by reason of its payment of the item," the payor bank is subrogated to the rights of one, any holder in due course as against the drawer or maker, second, of the payee or any holder against the drawer or maker on the item or on the underlying transaction, or third, of the drawer or maker against the payee with respect to the underlying transaction. See also supra footnote 8. We also note that Barnett could have required Redan to agree to indemnify Barnett in return for dishonoring the checks at Redan's request or Barnett could have insisted on Redan obtaining a court order directing the bank to refuse to honor the checks. Section 673.603, Florida Statutes. Alternatively, Barnett could have availed itself of an interpleader action, by depositing the funds in the registry of the court and allowing Redan and Warren Finance to resolve their claims in court.
[1] Fur Funtastic Limited involved the attempt of a savings and loan association to stop payment on a bank draft, drawn on the association's account in a commercial bank.
[2] Professor Lawrence observes that the Uniform Commercial Code (UCC) does not at present explicitly deal with the issue involved as to cashier's checks, and needs to be revised in order to end the ambiguity. Section 4-211(1)(b) of the UCC makes only one explicit reference to cashier's checks, allowing a collecting bank to take in settlement a cashier's check.